No. 27,154.

SAMUEL C. BATEMAN et al., *Appellees*, v. C. W. PREISSER et al., *Appellants*.

SYLLABUS BY THE COURT.

1. CANCELLATION OF INSTRUMENTS—*Setting Aside Deed for Fraud—Evidence.* In an action to set aside deeds on the ground that they had been procured through fraud and misrepresentation, the evidence considered and held sufficient to support the findings and judgment based thereon.

2. APPEAL AND ERROR—*Review—Finding on Substantial Evidence Conclusive.* The determination of issuable facts is the province of the trial court and its determination thereon will not be disturbed on appeal where there is substantial evidence to support the trial court's findings and judgment.

3. JUDGMENTS—*Vacating and Setting Aside—Discretion of Trial Court.* The allowance or denial of a motion to set aside a judgment and grant a new trial is a matter resting in the sound discretion of the trial court whose action thereon will not be reversed unless an abuse of such discretion is apparent.

4. Various alleged errors considered and held not to require a reversal.

Appeal from Gray district court; KARL MILLER, judge. Opinion filed April 9, 1927. Affirmed.

*K. W. Pringle, G. Austin Brown,* both of Wichita, *John W. Davis* and *Russell L. Hazzard,* both of Greensburg, for the appellants.

*P. D. Gardiner* and *O. W. Helsel,* both of Wichita, for the appellees.

The opinion of the court was delivered by

HOPKINS, J.: The action was one to set aside certain deeds upon the ground that they had been procured through fraud and misrepresentation. Plaintiffs prevailed and defendants appeal.

---

Appeal and Error, 4 C. J. pp. 839 n. 27, 878 n. 82; 2 R. C. L. 194. Cancellation of Instruments, 9 C. J. pp. 1209 n. 45, 1211 n. 55, 1256 n. 12. Judgments, 34 C. J. p. 365 n. 67; 15 R. C. L. 720.

The facts are substantially these: Samuel Bateman and his wife, Dora, had lived in Gray county for many years and had raised a family. In 1922, two sons (Ben and Charles) went to Wichita to attend a chiropractic school. While there they became acquainted with one Holt, with whom they went to live. Holt claimed to be possessed of certain supernatural powers and to be in communication with a number of spirits, among whom were "Red Cloud," "Geronomo," "Sitting Bull," "Screaming Panther," and "Henry Ward Beecher." Holt secured the confidence of the sons, on whom he proceeded to work dishonest devices. The sons received word from their relatives in Gray county that their 13-year-old brother, James, was in difficulty because of some rings that had been stolen. Dora Bateman, the mother, had in the meantime come to Wichita. They made an agreement with Holt to pay him $150 to go to Gray county to clear up the accusations against James. Accordingly, she, with Holt, went to Gray county for that purpose. To make a long story short, there was evidence showing that Holt persuaded the Bateman family that various of its members were in danger; that certain enemies were attempting to steal and sell two of the daughters into white slavery; that other dire things would happen to members of the family if they remained in Gray county, and that the advisable thing to do was to dispose of some three quarter sections of land there owned by the plaintiffs and to remove therefrom. Holt's suggestions were followed, and an advertisement was inserted in a Wichita paper to sell or trade the land. Plaintiffs were soon in touch with James C. McCaffrey and C. W. Preisser, brothers-in-law. Preisser owned and operated the Royal Billiard Parlor at 515 East Douglas avenue, Wichita. He and McCaffrey went with one of the sons to Gray county to look over the land, as a result of which plaintiffs agreed to and did execute deeds to the Gray county property to Preisser in exchange for the pool hall. Preisser received the deeds and Holt was given charge of the pool hall. In the course of time, Preisser sold one quarter section of the land, following which the plaintiffs filed this action. Holt, McCaffrey and Preisser and his wife were all made defendants. Holt and McCaffrey disclaimed interest in the land and made no defense. Preisser employed James Conley of Wichita as his attorney. In the early part of October, 1924, Preisser told Conley he contemplated a trip to Colorado. Conley told Preisser he would be able to advise him some two weeks in advance of the date set for the trial

of the case.  Preisser and his wife motored to Denver and stopped at 3550 Garfield.  On November 10, Conley received word the case was set for trial November 11.  He wired Preisser at the Denver address which had been given him.  Four days previous Preisser had removed from 3550 Garfield to an address on Broadway.  He did not receive the wire and was not present at the trial.  Conley sent his office associate, Victor Rogers, to Cimarron to try the case.  He appeared on behalf of the Preissers.  The case was tried by the late Judge L. M. Day, with a jury sitting in an advisory capacity.  The jury answered three questions, two as follows, submitted by the court:

"1. Was there a conspiracy entered into between the defendants William M. Holt, James C. McCaffrey, and C. W. Preisser to cheat and defraud the plaintiffs out of their property?  A. Yes.

"2. Did the defendant, C. W. Preisser, make any false and fraudulent representations with reference to the property he was trading to the plaintiffs for their property?  A. Yes."

And one by the defendants:

"1. If you find that any fraudulent representations were made by the defendant, C. W. Preisser, state what such fraudulent representations consisted of.  A. In value of property.  In earning power."

The court adopted and approved the special findings and rendered judgment for the plaintiffs.  After Judge Day's death and after Hon. Karl Miller had been appointed district judge, the entire matter was reviewed by him on a motion by defendants to set aside the judgment, the defendants contending they were prevented from having a fair trial because of their absence; because they were not represented at the trial by Mr. Conley and because of the absence of material witnesses they could have produced.  A full hearing was had, at which a transcript of the testimony in the original trial was considered, together with the testimony of various witnesses in support of the motion.  Judge Miller took the case under advisement and later overruled the motion.

The case is presented here in two phases.  First, the appeal from the original judgment; and second, the appeal from the order overruling the motion to set aside the judgment and grant a new trial.  The defendants contend that there was no evidence to support the findings of a conspiracy between them and William Holt.  They argue that the evidence does not show or tend to show that they had any knowledge of the peculiar relationship between Holt and the Bateman family; that defendant's agent, McCaffery, answered the

advertisement the same as any other person might have done; that all of the evidence shows that defendants acted in absolute good faith.

While the evidence to sustain the findings is meager, we are of the opinion that when considered together with the fair and reasonable inferences to which it was entitled, it was sufficient to uphold the findings.   For instance, Ben Bateman testified:

"McCaffery called on the phone. . . .   He stated that his brother-in-law, C. W. Preisser, owned a pool hall at 515 E. Douglas and was making a good profit. . . .   He asked for an appointment to take the matter up with me, and made arrangements to come down to W. M. Holt's residence at 1345 South Waco. . . .   He (Holt) said he had made an appointment with Preisser and McCaffery to meet him and myself. . . .   And, on the evening of the same day the contract was executed, Preisser, McCaffery and myself started out to my father's home.   When we reached my father's place, Preisser told some more about the pool hall. . . .   We went to Preisser's place of business in company with Mr. Holt.   The only time that Preisser came out to the house was at Mr. Holt's residence the morning we left to examine the land. . . .   Sometimes we met him (Preisser) on the street, passed and talked a little bit with him or spoke to him as we would go by.   Most of the time that I talked with him was in or around the pool hall. . . .   I never saw Preisser until I went with Mr. Holt to Preisser's place.   Mr. McCaffery and Mr. Holt did more talking than I or Preisser because McCaffery was representing Preisser, and Holt was acting as our adviser. . . .   The appointment was in the pool hall and James McCaffery, C. W. Preisser, Wm. M. Holt, C. A. Bateman and myself were present.   They said the pool hall was making a good income.   He (Preisser) did not go into the deal as much as McCaffery, yet he did not contradict when McCaffery made the statements.   He (Preisser) made the statement again that the pool hall was taking in about $1,000 and that the expense was $500.   Preisser did not make as flowery a speech as McCaffery."

Samuel Bateman testified:

"McCaffery, Ben and Preisser were out together.   Preisser said the pool hall was a going business and made $1,000 and expenses were about $500. . . . I heard Preisser say, 'I hate to put that over that poor old man.'   I don't know what Preisser meant."

Mrs. Dora D. Bateman testified:

"Preisser came out twice to look at the place.   Once his wife, father-in-law, and little boy came with him.   He (Preisser) said the pool hall was taking in $1,000 or $1,200 and the overhead expenses were about $500.   I believed the representations made by Preisser.   When the men went out to look at the place, Mrs. Preisser and I talked about the deal. . . .   About a week and a half after the first visit, Preisser, McCaffery and Ben came out and that is the time the trade was made.   They stated again that it was a good business. They said different things about the place; that it took in about $1,000, and I

Bateman v. Preisser.

asked different things about it, and they said the expenses were $500 to $600 and that they cleared about $500 per month."

With reference to the income of the pool hall after the deal was made, one of the Bateman's testified:

"Q. Do you mean to say you didn't take in money enough to pay the expenses? A. That is just what I mean.

"Q. Do you know whether or not the money which was taken in by the pool hall outside of what Holt dissipated would make it a profit or not? A. The first few days there wasn't enough money that I could see going into this business to pay all expenses, let alone paying his wages."

In addition to the findings of the jury, the court also found:

"That the defendant, C. W. Preisser, made false and fraudulent representations with reference to the property he was trading to the plaintiff, in that he falsely represented the value and earning power of said property. . . . That said false representations so made were material and were relied upon by the plaintiffs to their hurt and loss."

We think the evidence was sufficient to support the findings.

"That the determination of issuable facts is the exclusive province of the trial court, and such determination will not be disturbed on appeal where there is substantial though controverted evidence to support the trial court's findings and judgment." (*Hoff v. Hoff*, 106 Kan. 542, 189 Pac. 613.)

It is contended by the defendants that the pool hall was never tendered back to them; that plaintiffs made no efforts or offer to place them in the position they occupied before the trade. The plaintiffs, on their side, contend they never actually had possession of the pool hall; also, that the question of restoration or tender was not raised in the trial court and cannot for the first time be availed here. Samuel Bateman testified:

"Q. Did you ever take possession of the pool hall down there? A. No, sir.

"Q. They never did turn this pool hall over to you? A. No, sir; they didn't turn any money over to me.

"Q. Did you ever get any money out of this pool hall? A. I got ten cents paid in my hands, and that is all the money I ever got. I had to buy a garden hoe, and he wouldn't give me a dollar to go across the street and buy a hoe. Whether he wouldn't trust me with the dollar or what I don't know, but he never gave me a cent but ten cents."

Further detail of the evidence would serve no useful purpose. We are of opinion it was sufficient to show that Holt rather than the plaintiffs exercised possession and control of the pool hall after consummation of the deal.

It is strongly contended by defendants that the court erred in

overruling their motion to vacate and set aside the judgment. This was a matter going directly to the discretion of the trial court, and unless we can say that its discretion was abused we cannot reverse on that account. The judgment had the approval of two trial judges. Judge Day not only heard all of the evidence on the trial, approved the jury's findings and made some of his own, but overruled the motion for a new trial. Judge Miller not only considered the evidence taken on the trial, but had before him the various witnesses who testified on the hearing of the motion to set aside and vacate the judgment. After taking the whole matter under advisement the motion was overruled. While the record discloses a strong showing on the part of defendants to set aside the motion, we are unable to say that it discloses an abuse of discretion by the trial court. Various other matters ably presented in detail need not be discussed. All have been considered but none warrants a reversal.

The judgment is affirmed.