No. 28,379.

THE C. & A. AUTO SUPPLY COMPANY, *Appellee,* v. THE SHARPE BROTHERS CONTRACTING COMPANY, *Appellant.*

(273 Pac. 466.)

Opinion filed January 12, 1929.

*Harry Warren* and *Frank O'Brien,* both of Fort Scott, for the appellant.
*Fred W. Bayless,* of Fort Scott, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J: This is what is usually denominated as a fact case, and such, if there is any evidence to support the general finding of the trial court, will have to be affirmed, unless the law on some undisputed fact should require a different holding. There is

also involved in connection with the facts the law questions of agency, limitation of authority and ratification.

This action was originally brought before a justice of the peace by the plaintiff, an auto supply company, against the Sharpe Brothers Contracting Company, a corporation, to recover $145.75 for four tires and an inner tube which the plaintiff had sold and delivered to an employee of the defendant under authority from and for the benefit of the defendant, as the plaintiff claims. The case was taken from the justice court to the district court upon appeal, where trial was had before the court without a jury and judgment was rendered in favor of plaintiff, from which the defendant company appeals.

The defendant corporation was composed of four Sharpe brothers and the wife of one of them as stockholders and directors. It had a contract to construct a brick building in Fort Scott, about fifty feet distant from the place of business of the plaintiff auto supply company. One of these brothers was head man on the job and in charge there most of the time during the construction. He was referred to as the stout or big man, and his name was Ray W. Sharpe. Another brother and member of the company was there occasionally. At the very beginning of the construction work the evidence shows this stout man called on the plaintiff company and told one of the men in charge "that any time the boys came in there, to let them have anything they needed and charge it to Sharpe Brothers Contracting Company." The evidence further shows that more than thirty small purchases were made and charged to the defendant company during the period of a little more than sixty days. The names of nine different workmen are shown on the original sale card as making orders and receiving goods charged to the defendant company. No name appears on the card for these tires, and the same condition exists as to two other cards. Payment has been made by the defendant for all the other items on the list except this one.

The purchase of these tires was made by Russell Sharpe, a brick layer and workman on the building. He was a brother of the men composing the defendant corporation, but was not one of the company and had no interest in it. He was simply employed by the company to work on the building and received wages as other employees and laborers. He owned a Nash automobile and used it coming to and going from the building. The testimony shows the

brothers of the company, and particularly Ray, were often seen riding with Russell in this car and using it in connection with their business at and near the building. When Russell ordered these tires he told the salesman of the plaintiff to charge them to the defendant company; that "they was using his car going back and forth from one place to the other, and they had worn out his tires and was going to pay for the set of tires."

The testimony further shows that when this sale was made the plaintiff's managers thought Russell was one of the members of the contracting company, and that was the reason he sold the tires to the company and did not require him to sign the sale card as usual. Later, the manager said that was one of the reasons he sold the tires to the company at the request of Russell Sharpe, the other reason being he knew he was one of the workmen on the building, and he saw the Sharpe brothers using the car going back and forth.

The evidence shows that at least one other of the purchases was· made by Russell for which payment was made by the company. The constable testified to a conversation with one of the Sharpe brothers—the big man—when he served the papers and was trying to take the car, in which the big man said: "You can't take this car. It will cost somebody if you delay us with this car, because we are going to Independence."

There is a conflict of evidence on most of the matters above enumerated, particularly with reference to authorizing Russell to purchase tires or anything else for the defendant or on its account, the defendant's testimony being to the effect that no general order or instruction was ever given the plaintiff auto supply company to sell the workmen of the defendant anything; that their men were sent there to get gasoline and oil, and the men whose names are signed to the slips were workmen of the defendant; and that the company never had anything to do with the Nash car belonging to Russell. Ray Sharpe said he never used the car for anything in connection with the business and never agreed to pay any debts of Russell; made no statement to the constable when he attached the car, but talked to Russell when he called him out; he may have ridden in Russell's car to and from the work just like he rode in Mulkey's car and various cars.

Appellant cites good law and numerous cases to the effect that no company is liable for the acts of any one who assumes to represent it, unless the company has expressly or impliedly made such

person its representative, and that such liability is limited to the scope of authority to which such person is held out by the company to the world to possess, and if the facts are sufficient to excite one's suspicion as to the extent or limitation of such authority, such third person is chargeable with notice of limitations or restrictions in such authority. These well recognized principles of law would fit the testimony of the defendant to a nicety, but where there is a conflict the general finding of the trial court must control on appeal, and there is a direct and positive conflict here on the questions of agency and express authority. We have no difficulty in finding there was substantial evidence and sufficient evidence to support and sustain such finding.

"The determination of issuable facts is the province of the trial court, and its determination thereon will not be disturbed on appeal where there is substantial evidence to support the trial court's findings and judgment." (*Bateman v. Preisser,* 123 Kan. 217, syl. ¶ 2, 254 Pac. 1028.)

"A general finding of fact made by the trial court on conflicting evidence will not be disturbed on appeal where there was evidence to support the finding made by the court." (*Keister v. First Nat'l Bank,* 126 Kan. 495, syl., 268 Pac. 820.)

The same can be said as to ratification of such authorization by the paying for all the other purchases and claiming an interest in the car when being taken under attachment. It is not for this court to say that the court erred in apparently accepting the statement of the constable as to the substance of that conversation.

Appellant very forcibly argues that appellee should have suspected something was wrong or irregular from the size of this purchase as compared with all the other purchases, being mostly less than $3 each, and also from the statement made by Russell about the car being his but the company was paying for new tires because its officers had worn out the others in the business of the company. The first reason given by the manager of the plaintiff company is not good, wherein he said he believed it was all right because he thought Russell was one of the company. His thinking he was a member of the company would not justify the plaintiff in making a charge against the defendant for purchases made by him if he in fact was not a member thereof. There are other reasons given which have more merit. He was an employee of the company. Defendant had authorized purchases to be made by the boys or workmen and to be charged to the company. He had made at least one earlier purchase, which was included in the

settlement. He told the manager the company had worn out the tires in its business; and the manager had seen the officers of the company using the car frequently in connection with the building they were constructing. The company was apparently receiving a benefit directly from the use of this car.

In one of the cases cited by the appellant, decided against the party selling the goods, the court concludes the opinion with the following sentence:

"If the contract had been for the benefit of the corporation, a contrary presumption could be indulged in; and in such a case, very slight evidence of acquiescence would have been sufficient to give validity to the purchase." (*Getty v. Milling Co.*, 40 Kan. 281, 287, 19 Pac. 617.)

We think under all the evidence in the case there was sufficient to show a benefit to the defendant company and to allay any suspicion that might properly have arisen from the size and unusual character of the purchase, and sufficient to sustain the court in its general finding as to the purchase being within reasonable limitations and the general scope of the agent's authority.

The judgment is affirmed.