Rockwood v. Stubenhofer.

No. 25,927.

W. F. ROCKWOOD, *Appellee,* v. WILLIAM STUBENHOFER, *Appellant.*

SYLLABUS BY THE COURT.

CONTRACTS—*Oral Agreement to Care for Child—Limitation of Actions—Continuing Liability—Evidence.* The proceedings in an action to recover on an express oral contract for compensation for rearing a child considered, and *held:* the action was legal and not equitable; the action was one to enforce a continuing liability and was tried on the proper theory; an instruction complained of was neither misleading nor prejudicial; error was not committed in refusing to submit special questions to the jury; the special findings returned by the jury were sustained by the evidence and were not conflicting; and the verdict was sustained by the evidence.

Appeal from Chase district court; WILLIAM C. HARRIS, judge. Opinion filed October 10, 1925. Affirmed.

*W. J. Pirtle,* of Council Grove, *A. M. Harvey* and *Randal C. Harvey,* both of Topeka, for the appellant.

*R. M. Lee* and *W. E. Atchison,* both of Topeka, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one to recover on defendant's contract to pay for the rearing of his daughter. Plaintiff prevailed, and defendant appeals.

Defendant's wife died a few days after the child was born. Plaintiff's wife is defendant's sister. The petition pleaded an express oral contract, by the terms of which plaintiff agreed to take the child into his home and care and provide for her, and defendant agreed to pay plaintiff for support and maintenance of the child. Performance by plaintiff and nonperformance by defendant were duly alleged.

The answer denied that defendant made any agreement with plaintiff to pay for care and maintenance of the child, and alleged that, pursuant to a family conference in which plaintiff's wife expressed eagerness to take the child and raise her as her own, defendant left the child at plaintiff's home, with plaintiff's wife, who thereafter had care, custody and control of her; that when the child was left with plaintiff's wife there was no understanding or agreement that there was to be either charge or compensation for

1. Actions, 1 C. J. § 175; Parent and Child, 29 Cyc. pp. 1614, 1615; Trial, 38 Cyc. pp. 1913, 1926.

keeping her; that defendant understood, pursuant to the family conference, that plaintiff's wife was to keep and care for the child for the benefit to be gained from the child's companionship; that plaintiff's wife had no intention of charging defendant for rearing the child; and that plaintiff consented to and acquiesced in the arrangement whereby plaintiff's wife took the child. The answer further alleged that defendant refused to permit plaintiff's wife to adopt the child; that plaintiff and his wife alienated the child from her father, refused to permit defendant to have the child, and changed the child's name to Rockwood. The answer also pleaded the statute of limitations.

The evidence disclosed that a family conference was held at defendant's home after his wife's death, at which the child's future was discussed, and the child was taken to plaintiff's home. Afterward defendant went to plaintiff's home, and there discussed with plaintiff and his wife the subject of rearing the child. According to the recollection and mode of expression of the witnesses, various statements were made of the proposed terms on which the child was to be kept in plaintiff's home. Among them were statements by defendant that he would pay "all expenses," pay "every cent of support," pay "everything you have to spend for her," and that plaintiff should "get anything charged that you need and I will pay for it."

Plaintiff testified to the following definite offer and acceptance: Defendant said to plaintiff, "I want you to take Margaret and raise her and I will pay you for keeping her." Plaintiff replied, "All right; we will sure take good care of her." Defendant denied that he made the statements attributed to him, and denied making any statement having the effect of expressing obligation to pay anything for care, support or keeping of his child.

According to the testimony of both plaintiff and defendant, the subject of religious training was discussed in connection with the arrangement for rearing the child. Defendant testified he said to plaintiff's wife, "You must raise her a good Catholic, for my wife's sake." Plaintiff's wife replied, "I will do that." Plaintiff testified defendant requested that the little girl should be raised a Catholic, and plaintiff said he would do so to the best of his ability.

The evidence on behalf of plaintiff disclosed that he provided for and reared the child as if she had been his own. She was baptized in the Catholic church, received there her first religious

Rockwood v. Stubenhofer.

instruction, and was taken to Catholic church. But when she was about thirteen years old an incident occurred which caused her to refuse to have further connection with that church. At school other children called her by the name Rockwood, and she accepted and afterward adopted that name. She was graduated from grade school, high school, and then from Washburn college. Plaintiff's wife did propose adoption of the child, but defendant would not consent. Plaintiff and his wife were not responsible for an estrangement which arose between the girl and her father. Important portions of the testimony on behalf of plaintiff were given by defendant's daughter. Proof of the value of plaintiff's services pursuant to the contract was duly made.

The court instructed the jury that there was a presumption of law which stood as evidence in the case, that such services as plaintiff rendered in rearing the child were rendered for love and affection, and without expectation of compensation; that plaintiff was obliged to overcome that presumption; and unless plaintiff proved an express contract for compensation for keeping the child he could not recover. Defendant's theory of the case, that he intrusted the child to his sister, who wanted to rear her, was duly stated, and the jury were advised that, if the arrangement for rearing the child were made with plaintiff's wife, plaintiff could not recover. Right of defendant to direct religious training of his child was stated, and it was left to the jury to determine whether training in the Catholic faith was part of the arrangement. The jury were told again that plaintiff claimed a specific oral contract for keeping the child, no amount of compensation having been agreed on, and if the jury found he should recover, he should recover the reasonable value of the services rendered. In that connection the court said there had been "brought into the contract by the evidence" that defendant had said if the child needed anything, plaintiff should get it, charge it to defendant, and defendant would pay for it. The court, however, immediately left it to the jury to say whether that kind of an agreement was included in plaintiff's oral contract, and instructed the jury what, if such were the case, plaintiff could recover. The jury were instructed that if defendant directed plaintiff to buy things for the child and defendant would pay for them, the statute of limitations barred recovery for all items except those bought and charged within three years preceding commencement of the action. In other respects the jury were properly and adequately instructed.

Rockwood v. Stubenhofer.

The jury returned a verdict for plaintiff, and with the verdict returned the following special findings of fact:

"Q. 1. About the time of the death of the wife of defendant, did the defendant make and enter into a contract with the plaintiff concerning the care and keep of the minor child? A. Yes.

"Q. 2. If you answer question number one "Yes," state fully the terms and condition of said contract. A. This was a contract to rear said child in the Catholic faith, to receive companionship of child and compensation from father of said child for same.

"Q. 3. If you answer question one "Yes," state whether or not the plaintiff complied fully with the terms and conditions of said contract? A. Yes, to the best of his ability.

"Q. 4. Not submitted.

"Q. 5. Not submitted.

"Q. 6. Did the plaintiff and his wife take said child into their home, without expecting or intending to be paid for her care and keep? A. Yes, with the expectation with the father's help and supporting the child.

"Q. 7. Did the plaintiff and his wife take said child into their home for the companionship and association and comfort of said child expecting to rear it as their own? A. No.

"Q. 8. With whom was the agreement or arrangement or contract made by the defendant concerning the care and keep of said child? A. W. F. Rockwood and wife.

"Q. 9. Did the wife of plaintiff say that she would like to have said child, and would be tickled to get it? A. Yes if she could adopt it.

"Q. 10. Did the wife of the plaintiff state the defendant had given the child to her as long as she lived, and there was no need of any adoption? A. No.

"Q. 11. Did the plaintiff state that he had taken a child to raise as his own, meaning and referring to the child Margaret? A. No.

"Q. 12. Not submitted."

Requested findings 4, 5 and 12, which were not submitted, were as follows:

"Q. 4. If you find that there was an express contract with defendant and plaintiff, did the defendant say to plaintiff, 'Anything you want to get for the child, you get it and have it charged to me?'

"Q. 5. If you find that there was such an express agreement and request made by the defendant, as stated in question number four, state whether or not the plaintiff complied with the same fully.

"Q. 12. At the time the defendant left said child with the sister, did she intend to charge her brother for her care and keep?"

Defendant says that while this is an action at law, such actions are essentially of an equitable nature, and cites *Cheever v. Kelly*, 96 Kan. 269, 150 Pac. 529. The present action is not of an equitable nature; it is a pure action at law on an express contract to pay

Rockwood v. Stubenhofer.

money, and it bears no resemblance to the action in the Cheever case.

Defendant now admits the evidence was "probably" sufficient to establish an oral contract on his part to pay some money in connection with the rearing of his child; so he interprets the evidence, and reaches the conclusion the agreement did not extend to anything except payment for necessities, provided they were charged to him. This would have been fair argument to the jury, but it is not directed to any matter which this court is to determine. It will be recalled defendant's position in the district court was that he did not say anything which obligated him to pay anything. It would now be to his advantage to restrict what he did say about compensating plaintiff to items which were purchased and charged: first, because recovery for such items, except a few, would be barred; and second, because plaintiff made no proof whatever of such items. It was the function of the jury to determine whether the minds of the parties met in agreement upon something, and if so, what they agreed to. The jury has performed that function, has rejected the purchase, charge and pay theory, and the jury's finding of a contract to pay compensation for rearing the child is sustained by evidence which has been quoted.

Defendant says the contract was not performed by plaintiff, and that finding 4 is not supported by any evidence. Here defendant brings in his limited liability theory—says plaintiff did not send bills for necessities purchased—and adverts to subjects mentioned above, Margaret's relation to the Catholic church, disrespect for her father, and change of name. The finding was well sustained.

Defendant says there was no proof as to measure of recovery, no proof of actual amounts expended, and so the case was tried on a wrong theory. The case was tried on the theory presented by the petition—perfectly legitimate theory—and, as stated above, proof was made affording a measure of recovery according to that theory. Defendant cites some authorities pertinent to cases prosecuted on a different theory. It is not necessary to discuss them.

Defendant says the statute of limitations bars recovery for all expenditures made for support of the child more than three years before commencement of the action, and brings in again his limited liability theory. If the action were for items of expense, plaintiff could not go back beyond three years, but it is not of that character. It is an action to enforce a continuing liability.

Defendant complains of the instruction in which the court made reference to defendant's liability for articles purchased and charged to him. It is said the instruction gave the jury to understand there was a specific oral contract to pay something more than for necessities purchased. The interpretation placed on the instruction is not permissible, in view of the fact the jury were plainly told it was incumbent on plaintiff to prove the contract he had alleged; and the instruction as a whole is not now important because the jury took out of the case the subject to which it relates—the buy, charge and pay theory, which defendant is inclined to prefer in this court.

Defendant complains because special questions 4, 5 and 12 were not propounded to the jury. Question 2 asked the jury to state fully the terms and conditions of the contract. It was sufficient to have that done once. Question 3 asked the jury if the contract, the terms and conditions of which were fully stated in answer to question 2, was fully performed. One answer to that question was enough, and because questions 2 and 3 covered the entire subject of terms of the contract and performance, questions 4 and 5 were superfluous. Plaintiff sued on a contract made with him. The court told the jury he could not recover if the child was taken by his wife, and question 12 did not pertain to plaintiff's case.

Defendant reads the answer to question 6 in such a way that it throws the findings into conflict with each other and ruins plaintiff's case. Read carefully, and as the law requires it to be read—to harmonize if possible with the other findings—it fits in very well with the others.

Plaintiff sued for $40 per month from March 21, 1902, to January 7, 1923, a total sum of $9,980. The verdict was for $3,280. Defendant says the verdict is not sustained by the evidence.

Plaintiff produced the testimony of an expert child-welfare worker that it is worth from $8 to $10 per week to rear a child to the age of 21. The witness testified, however, that persons will take a homeless child which is not adopted, into their home, contract to feed, clothe and educate it, and in addition to give the child $100 or $150 to start it out in life. Sometimes relatives of a child not adopted pay for its keep. Ordinarily persons taking a child into their home do not expect or receive compensation. Another witness whose business it is to find proper homes for children testified the expense of keeping a child is about $12 per week. Plaintiff testified that up

to the time Margaret finished high school, $10 per week would no more than cover his expenses for keeping and providing for her. He also said companionship could not be measured in money. Margaret testified that she worked and assisted about the home as any daughter would.

Defendant may not complain if the verdict was for a smaller sum than the evidence would warrant, unless the verdict was arrived at by improper methods. He says the jury were not justified in substituting their independent judgment for the evidence introduced. There is nothing to indicate the jury did so. The evidence has been recited. Very plainly it needed reconcilement and needed application to the situation and circumstances of this family living in Cottonwood Falls and in Topeka during the period of Margaret's nurture.

Defendant says cost of care and maintenance of a child is not a matter upon which jurors have knowledge in common with the rest of mankind, especially cost between 1902 and 1923. The court is of the opinion the jury did have general knowledge of family economics during the period in question, and had such knowledge of the commonest expense in the world, the bringing up of children; that they could form a judgment upon whether the highest estimate of cost should be discounted, what allowance should be made for the help in the home of one standing in the relation of daughter, and generally upon the application of the evidence to the cost of this plaintiff of rearing this child.

Defendant makes the dogmatic statement that the verdict shows on its face it was a compromise of the individual opinions of the jurors. The court is unable to discover anything upon the face of the verdict but a concord of minds upon the value of plaintiff's services to defendant in rearing his daughter. There is nothing to indicate misconduct, irregularity or arbitrary disregard of the evidence, and, conceding the verdict might have been for a larger amount, the court is not authorized to set it aside.

The judgment of the district court is affirmed.

Harvey, J., not sitting.