No. 31,021.

JESSIE W. HOUSE, *Appellee*, v. THE WICHITA GAS COMPANY, *Appellant*.

(20 P. 2d 479.)

Opinion filed April 8, 1933.

*A. M. Ebright, P. K. Smith,* both of Wichita, and *Robert D. Garver,* of Kansas City, Mo., for the appellant.

*John W. Adams* and *O. A. Keach,* both of Wichita, for the appellee.

The opinion of the court was delivered by

THIELE, J.: This was an action for damages growing out of the installation of heating equipment and regulating devices. The second amended petition on which the case was tried contained allegations that the defendant is a corporation doing business in the city of Wichita and operating a gas plant, selling and installing gas appliances and fixtures and distributing gas; that about October 1, 1925, it sold to plaintiff's husband and installed in their residence an appliance consisting of a burner, aquastat, motor valve, clock thermostat, gas piping and electric work, for the purpose of furnishing heat to the house, knowing the purpose for which the same were to be used and that they would be used and operated by the plain-

tiff; that the pipe and equipment were under the sole care and management of the defendant company; that on December 3, 1926, a large amount of gas had escaped from the furnace in a manner unknown to the plaintiff, and that when she lighted a match an explosion took place whereby she was injured; that during the months of November and December, 1925, and at various times during the months of January, February and March, 1926, and up until shortly before the explosion occurred plaintiff's husband had orally notified the defendant that the appliances were not working properly and were defective in some respects, and that there was gas escaping somewhere, but he was unable to ascertain where it was; that the defendant agreed to make an inspection, but failed to do so; that the defendant, knowing of the dangerous condition of said appliances and being informed of the defect in the appliances and their condition, continued to furnish gas to be used therein and to permit and allow the appliances to be used without inspecting or remedying the defects; that the plaintiff relied upon the appliances being fit and proper for the purpose for which they were installed, and that same would be maintained in a safe condition by the defendant; that the plaintiff is unable to state the particular defects in said appliances, except that the same were not in fit and proper condition for the purpose for which they were purchased, and for the further reason that immediately after the explosion they were wrongfully removed from the premises for the purpose of preventing the plaintiff and her husband from inspecting the same or allowing them to have inspection made of the same, and for that reason plaintiff is unable to make a more definite statement of the acts of negligence of the defendant company or the defects in the appliance that caused the explosion; that prior to the explosion the defendant negligently failed to make inspection of said appliances; that the appliances and equipment were highly complicated and dangerous instrumentalities, owing to the purpose and use for which they were installed and used, and the defendant knew or should have known by the exercise of proper care and inspection that the installation and use would result in injury, and that it was the duty of the defendant to inspect the furnace and appliances to see that same were in proper repair; that the equipment and appliance were eminently dangerous and were at all times from the installation of the same in a defective condition, the material being defective and the same not properly installed, which was unknown to plaintiff but should have

been known and discovered by the defendant, and defendant owed plaintiff a duty to inspect the appliance, discover the defect and prevent injury; and that the defendant was guilty of negligence in not inspecting the furnace and appliance prior to the explosion, after being notified so to do and promising plaintiff's husband that the appliance would be inspected; that the defendant was guilty of further negligence in that it had good reason to know that plaintiff would be compelled to operate the installed appliances in her household, knew that the plaintiff was unskilled and did not know how to operate said appliances without instructions, and failed and neglected to adequately and sufficiently instruct her with reference thereto, which it was the duty of the defendant to do. The petition also contained allegations as to the nature and extent of plaintiff's injuries. The defendant's verified amended answer consisted of a general denial and alleged that the appliances were installed by virtue of a written proposal executed by plaintiff as agent for her husband, a copy of which was attached to the answer, denied that any of its agents or employees had any authority to alter the terms of the written proposal or to supplement the same with any additional agreements, alleged that it furnished the material and performed the work provided in said proposal, and that no faulty workmanship or defective material in connection therewith was called to the attention of the defendant or reported to it within the six-months period following installation or at any other time, and that it had fully performed all of its agreements. The answer further alleged that if the plaintiff was injured as alleged, the explosion was the result of negligent operation of the equipment by the plaintiff and was not caused by any defects in the equipment itself, the negligence of plaintiff consisting in her attempt to light the furnace after opening the valve in the equipment and permitting the furnace to become filled with gas prior to the time a light was applied to the burner, and that such negligence was the proximate cause of the explosion and resulting injury and directly contributed to the same. The answer further alleged that the action is barred by reason of the fact that no faulty workmanship or defective material was reported within the period of six months after installation. The proposal, so far as material here, contains five paragraphs as follows:

"Description of equipment: 1 D1 CE unit; 1 8 Honeywell clock thermostat; 1 Honeywell aquastat; 1 Honeywell motor valve.

"Description: Complete installation of burner, aquastat, motor valve, clock thermostat, gas piping and electrical work, ready to operate.

"Guarantees: We guarantee this equipment against faulty workmanship or defective material for a period of six months following installation providing defect is reported during that time in writing, and otherwise only in so far as the manufacturers guarantee the equipment and its performance to us in writing. No verbal guarantees shall be considered binding in any manner. See special provisions below.

"Special services: The services of our engineers and service men are available to you at any time for consultation, and supervision of the above work.

"Space for special provisions: This equipment is guaranteed to work to your satisfaction from date of installation to May 1, 1926. If not, we will remove same and refund you all money paid to us. If service pipe is not large enough we will change with no cost to you."

Plaintiff filed a verified reply denying the allegations of the answer in part and that the defendant ever delivered to plaintiff's husband the above proposal or that her husband ever entered into any written contract for the purchase and installation of the above equipment. Plaintiff further denied that she was the agent of her husband in connection with the alleged proposal.

Prior to trial defendant filed a motion for judgment on the pleadings, and at the opening of the trial objected to the introduction of evidence. The motion was denied and the objection overruled.

On trial there was evidence that the appliance was installed and operated; that on January 21, 1926, and thereafter at intervals to November 30, 1926, plaintiff's husband called the defendant company by telephone to report that the furnace and appliance were not operating properly, and that after each call they would then operate properly for a time; that plaintiff and her husband were not at home when defendant company's employees were there and do not know just what was done. Plaintiff testified, and it was not disputed, viz.:

"I was not at home at the time of the installation of these appliances, but came home in the afternoon, and the man who was installing the appliances had not yet left. I suppose this man was the man who installed the appliances.

"He told us—my son was with me—'Now I want to show you about the thermostat. In case you at any time go to light your furnace for any cause, turn the indicator on the thermostat to the left. This will shut out the gas from your furnace.' I don't recall the words he used, but that was the impression that it left. That if we turned the indicator to the left, we could in safety go to the basement and light the pilot. He said after turning the indicator, we should wait a little while. He may have said fifteen minutes, I don't recall."

She further testified that he gave her no further instructions and that he said nothing about a master valve. The furnace was used during the winter of 1925-1926 and was again put in use about November 1, 1926. On December 3, 1926, the furnace was in operation in the morning. Plaintiff was employed in her husband's office and came home in the late afternoon and the house was cold, the thermostat was set at 70, where it was in the morning.

"I turned the indicator to the left and shut off the gas. I knew there was some difficulty somewhere or the house would be warm. I talked to the maid in the kitchen and gave her instructions as to the dinner. . . . I then went to the basement. It must have been ten or twenty minutes after I had turned the indicator on the thermostat. I opened the door of the furnace and looked in it. I didn't see any light. Everything was dark and the fires were out. The pilot light was out. I lighted a match and picked up a paper. I stepped to the front of the furnace and struck the match on the door of the furnace. There was a big explosion. . . . "

After the accident the defendant company removed the electric motor and replaced it with another. The removed motor had a short in it. The purpose of the motor was to turn on and shut off the gas. The effect of the short was to make the motor operate continuously and the arm operated by it would keep going round and round and open and close the gas valve. If the motor had worked properly, the arm would have stopped at every half-revolution and either turned on or shut off the gas.

The jury returned a verdict for the plaintiff and answered special questions as follows:

"1. Do you find that the explosion was directly caused by any of the equipment installed by the Wichita Gas Company being: (a) Out of repair? A. —— (b) Defective? A. Yes.

"2. (a) If you answer either (a) or (b) of question 1 in the affirmative, state what appliance was defective or out of repair. A. Motor.

"(b) In what particular was such appliance defective or out of repair? A. Short in motor.

"3. (a) If you answer question 1 in the affirmative, state in what manner such defect or lack of repair caused the explosion. A. Improper operation of motor.

"(b) State how long such defect or lack of repair existed. A. Intermittently since January 21, 1926.

"4. (a) Do you find that the defendant was negligent? A. Yes.

"(b) If you answer in the affirmative, state fully of what such negligence consisted. A. Defective equipment and failure of proper instruction of operation of equipment.

"5. (a) Do you find that the plaintiff was guilty of contributory negligence? A. No.

"(b) If you answer in the affirmative, state of what such negligence consisted. A. ——.

"6. If you find for the plaintiff, state what amount you allow.

"7. What do you find was the approximate cause of the explosion and resulting injuries? A. Defective equipment and lack of proper instructions when equipment was installed."

The defendant's motions to strike answers to special questions, for judgment notwithstanding the verdict and for a new trial were denied, except that a reduction was made in the amount allowed for medical and other expenses. Judgment was rendered for plaintiff, and defendant appeals.

Appellant in its brief says that the real question involved in this appeal is the liability of a dealer to one who is injured in operating appliances sold by the dealer, and this question, with those incident to it, is fully presented.

Appellant argues as though it were engaged principally as a dealer selling appliances and ignores the fact that its principal business is the distribution of natural gas and that its sales of appliances are for the primary purpose of increasing the use of natural gas. In *Hashman v. Gas Co.*, 83 Kan. 328, 331, 111 Pac. 468, this court said:

"Natural gas, as all know, is inflammable and explosive in a high degree—a very dangerous agency—and those who transport it are held to the exercise of great care; they are required to lay and maintain pipes that are safe and secure for transporting gas, and carefully to overlook and inspect the pipes in order to keep them in a safe condition, and to detect and repair any leaks or defects in them."

Also, see *Swayzee v. City of Augusta*, 108 Kan. 785, 788, 197 Pac. 208, 210.

Our attention is directed to *Huset v. J. I. Case Threshing Machine Co.*, 120 Fed. 865, and to *McPherson v. Buick Motor Co.*, 217 N. Y. 382, 111 N. E. 1050, pertaining to the liability of manufacturers, and also to cases pertaining to the liability of the seller of an article not manufactured by him, and to cases such as *Oil Co. v. Rankin*, 68 Kan. 679, 75 Pac. 1013, with reference to the rule of *caveat emptor*, and to still other cases pertaining to the dealer's liability where he sells an article in common and general use, but these cases are not decisive here, for the reason that after the sale was made the seller maintained supervision of the appliances and repaired and adjusted them. It may be conceded that the appliances sold were not in and

of themselves dangerous, but the defendant company, in selling and installing them, knew that they were to be used in connection with natural gas sold by it for heating purposes. The written proposal of the company recognizes this: In one part it provides that the equipment is to be installed "ready to operate," and that "the services of our engineers and service men are available to you at any time for consultation and supervision of the above work." For what purpose? Evidently to see that the equipment was properly installed and properly operating. And evidence, which the jury evidently credited, was that in the period of about thirteen months the company did inspect and in some manner adjust or repair the appliance on ten different occasions. Where a company, whose principal business is distribution of natural gas for lighting and heating purposes, under contracts similar to that involved here, sells regulating appliances to be used in burning gas and thereafter supervises and repairs same, it is incumbent upon it to exercise great care that such appliances not only are fit and proper for the purpose for which they are installed but that they are in proper working condition. It is argued that by answers to the special questions the jury found the motor was not out of repair, but was defective and that the defect was a short in the motor; that a short is not a defect, but the motor was simply out of repair. Very likely when the motor was installed it was not defective or out of repair, but the answers, taken as a whole, show that the accident occurred because the motor did not function properly. If there was any inconsistency in the answers, it was the duty of the lower court to harmonize them, if possible, and it is likewise our duty so to do. (*Rockwood v. Studenhofer*, 119 Kan. 307, 312, 239 Pac. 993.) We have no difficulty in so reading the answers to the special questions that it is clear from them that the explosion was caused by a motor which did not work properly because of a short in it and thereby permitted an accumulation of gas. The jury's answer to the fourth question shows that it used "out of repair" and "defective" synonymously. The fact that on numerous occasions complaints were made to the company, and after each complaint there was improvement in performance, shows that the company recognized its obligation to repair. Shorts in motors are not uncommon, and the company must have anticipated what could or would happen where the effect was to alternately turn the gas on and off. (See *Cracraft*

*v. Wichita Gas Co.,* 127 Kan. 741, 742, 275 Pac. 164, and *Atkinson v. Wichita Gas Co.,* 136 Kan. 854, 18 P. 2d 127.)

The jury found further that lack of proper instructions when the equipment was installed was a proximate cause of the explosion.

It is urged by appellant that it was not required to give instructions. Assuming that to be true, it did give some instructions, and having done so it was its duty to go further and give instructions at least complete enough to cover the various phases of operation. The instruction with reference to shutting off gas by operation of the thermostat, without calling attention to the master valve, was likely to and did directly contribute to the explosion. (*Karsteadt v. Phillip Gross H. & S. Co.,* 179 Wis. 110, 190 N. W. 844; *Graass v. Westerlin & Campbell Co.,* 194 Wis. 470, 214 N. W. 161, 164.)

Although not evidence of negligence, other circumstances which the jury had a right to consider in arriving at its verdict were that after the explosion the defendant removed the motor which had the short in it and installed another motor and about a week or two after the accident the company put up written instructions as to operation of the furnace. (*City of Emporia v. Schmidling,* 33 Kan. 485, 6 Pac. 893; *St. L. & S. F. Rly. Co. v. Weaver,* 35 Kan. 412, 11 Pac. 408.)

Whether the appliances were in proper condition, whether the defendant exercised the requisite degree of care required and whether the plaintiff was guilty of contributory negligence, were questions for the jury, and its findings are supported by the evidence and are conclusive here. (28 C. J. 590.)

Complaint is made as to some of the instructions, which have been examined. They correctly stated the law applicable to the issues tendered. There was no error in the lower court's rulings upon the motion for judgment on the pleadings, on objection to introduction of testimony, on the defendant's demurrer to the evidence and the motions after trial. The verdict and the judgment are supported by the evidence.

The judgment is affirmed.