No. 30,996

F. F. FRITCHEN, *Appellant* and *Cross Appellee,* v. MARY JACOBS, *Appellee,* and E. C. MUELLER, *Cross Appellant.*

(26 P. 2d 448.)

Opinion filed November 11, 1933.

*A. E. Crane,* of Topeka, and *N. C. Else,* of Osborne, for the appellant and cross appellee.

*R. L. Hamilton, Leon W. Lundblade* and *Max L. Hamilton,* all of Beloit, for the appellee and cross appellant.

The opinion of the court was delivered by

THIELE, J.: This was an action to recover on a note, the defense being that the note was obtained by duress. At the first trial the court gave an instructed verdict in favor of the plaintiff. On appeal that ruling was set aside. (*Fritchen v. Mueller,* 132 Kan. 491, 297

Pac. 409.) In the decision the claims of the adverse parties, as disclosed by the pleadings and the evidence, are reviewed at length and will not be here repeated.

In the last trial, after presentation of the evidence, the cause was submitted to the jury, under instructions, some of which are hereafter referred to, and a verdict returned in favor of each defendant. Thirty-one special questions were submitted and answered. Motion for new trial was filed and denied as to defendant Mary Jacobs and allowed as to defendant E. C. Mueller. The plaintiff appeals, and the defendant Mueller files a cross appeal.

The appellee challenges appellant's right to be heard on this appeal, for the reason that the matter was fully adjudicated in *Fritchen v. Mueller*, supra. There is no showing that such a defense was raised in the trial court, and it cannot be raised here for the first time. No technical reason need be given, however. It is true that the same issue is here presented as at the first trial, but in reviewing the evidence, at the first trial, this court was determining only the correctness of the trial court's ruling directing a verdict for the plaintiff, and in the opinion said:

"It should be understood, of course, that in discussing these matters in this blunt fashion, this court does not intend to adjudicate for itself the controverted facts of this case," (p. 495.)

and the cause was remanded for a new trial.

Among other matters complained of is that defendants were permitted to state what the attorney, N. C. Else, said respecting his employment. It would serve no useful purpose to recite the questions asked and answers returned as to conversations wherein Else was quoted as making assertions that he represented the payee of the notes sued on. Of course, agency could not be proved by the declarations of the claimed agent. (See 2 C. J. 935 and cases cited.) It is true that officers of the bank denied that Else was its agent or the agent of its officers, and that plaintiff denied Else was his agent, but there was also much testimony concerning the negotiations leading up to and during the execution of the notes, showing the part taken by the plaintiff and other officers of the bank, by Mr. Else, and the defendants. Agency did not have to be proved by direct evidence; it could be implied from the acts and conduct of the parties (see *Fritchen v. Mueller*, supra), and when such testimony was adduced, then it was proper to show, as part and parcel

of the entire transaction and negotiations, what the claimed agent said respecting his employment. (2 C. J. 939.) Some complaint is made that evidence as to Else's statement was received before showing of his agency was forthcoming. While it would have been more correct to have made the showing in an orderly manner, we are not able to see where appellant was prejudiced. The jury was warranted in finding in answer to question No. 1 that Else was not the agent of defendant Mueller, and in answer to question No. 4 that he was the agent of the payee bank.

In connection with the proof of Else's statements, the abstract and counter abstract disclose contradictory versions of what occurred. At the close of defendant's case appellant moved to strike out all evidence with respect thereto, apparently on the contention it had not been otherwise shown that Else was the bank's agent. Appellant's version is that the motion was sustained. Appellee's version is that it was denied. The counter abstract recites:

"THE COURT: The motion should be denied, it shouldn't be stricken out, but the jury will have to be instructed that they cannot consider as any evidence of agency, and that they cannot consider in this case—consider Else's statements, unless they first find that he was the agent of the bank."

The court's instructions with respect to showing agency did not cover the above in any very adequate way, but appellant did not request any further instruction, and it is too late to complain now.

Appellant complains that the answers to certain questions are without support in the evidence. Question No. 5 asked what officers of the bank employed Else, and the jury answered: "F. F. Fritchen, May and Lutgen."

The jury had heard all of the evidence as to how Mueller happened to be at Else's office; that the three named men were there, conferred with Else, then informed Mueller of their demands, and thereafter that Else had visited Mrs. Jacobs in carrying out the arrangement of getting her to sign the notes, and from that they were warranted in finding that the three above-named employed Else, even though there was no witness who testified directly to it, and even though Fritchen testified he did not hire Else. The answers to questions Nos. 6, 7 and 8 were to the effect that plaintiff had knowledge of the duress on Mrs. Jacobs before he bought the note, and acquired such notice by reason of his presence at bank-board meetings and at Else's office. The claim is made that at neither of these meetings was prosecution of Mueller mentioned,

and that nothing was said about any threats to Mrs. Jacobs. Assuming correctness of the claim, it appears from the answers to other questions that Else was the agent of the bank and its officers, that Fritchen was an officer, and that as a result of the efforts of the officers and of Else, Mrs. Jacobs signed the note. Diebolt, cashier of the bank, was said to have told Mrs. Jacobs if she didn't sign the notes, Else would start for Topeka. The above and other testimony, not necessary to repeat here, warranted the answers the jury made. Considerable space is given to the proposition that because Mrs. Jacobs, at the request of the bank, made financial statements, she waived the duress. The jury, in answer to special questions, found that the statements were not voluntarily made and that Mrs. Jacobs was still under duress when the same were.made. An instruction with respect to these financial statements was given, which is criticised because it used the expressions "there seems to be an admission of liability on the note in question," and "if she signed, said statements, or either of them, knowing that they contained the statement they do contain, then in this event this would constitute acknowledgment of the liability of the defendant." It is contended that under *Burns v. Spiker*, 109 Kan. 22, 202 Pac. 370, this put the burden of showing that Mrs. Jacobs knew the contents of the statements on the plaintiff. The evidence showed, rather fully, when, how and why these statements were prepared and signed. Plaintiff gave his version, defendant Jacobs gave hers. We do not believe the instruction is subject to the criticism leveled at it; in any event, other instructions called attention to the defenses of the defendants and that the burden of proof was upon them, and that if they failed to prove one or both defenses by the greater weight of the evidence, the verdict should be for the plaintiff. It is further argued in connection with these financial statements that the jury having answered "yes" to questions asking if these statements were not given by reason of a request of the bank's cashier, that it was customary among the customers of the bank to make such statements, the answers that they were not given voluntarily cannot be true. This does not follow necessarily. It was the duty of the lower court and it is our duty to harmonize the answers, if possible. (*Rockwood v. Stubenhofer*, 119 Kan. 307, 312, 239 Pac. 993; *House v. Wichita Gas Co.*, 137 Kan. 332, 338, 20 P. 2d 479.) Literally, Mrs. Jacobs may have given the statements because of the cashier's

request, but in response to other questions the jury found she was still under duress, and, that being so, the statements would be involuntarily given. It is contended that the finding that the giving was involuntary is not supported by competent evidence; that such evidence as was given was a conclusion and in response to a leading question. Mrs. Jacobs testified that the statements as presented to her were already prepared, that Diebolt made her sign them, and that she was scared. She was examined fully, both on direct and on cross-examination, and on redirect examination she was asked: "I will ask you if when you signed those you were still under the fear of Gene's arrest because of the statements of Mr. Else," to which she answered "yes." The question may have been leading and the answer a conclusion, but it summarized her testimony, and, in our judgment, neither the question nor the answer substantially prejudiced the plaintiff's rights.

The jury was asked whether plaintiff purchased the note sued on on June 6, 1927, and answered "no." The evidence showed without denial that he purchased it on June 26, 1927. Had the question been whether plaintiff had ever purchased the note, the answer would have been without support; but the answer, as returned to the question submitted, was literally correct. The only purpose of such a question would have been to show that the note was purchased before maturity, and as to that there is little dispute. We have noticed the principal answers which appellant believes were either unsupported by the evidence, were inconsistent with other answers, or, as a matter of law, were insufficient to sustain the general finding in favor of the defendants, and especially Mrs. Jacobs. Without going into any further detail, we have examined the questions and answers with reference to whether Fritchen relied on the financial statements of Mrs. Jacobs in purchasing the note, whether he had knowledge the statements were given under duress, and whether he purchased the note in bad faith, and find nothing therein that warrants a reversal.

Assuming the correctness of his own version of the construction to be placed on the answers to the special questions, appellant argues he is entitled to judgment. This argument swings around the proposition that Mrs. Jacobs, by making the financial statements, waived any duress there may have been used against her and thus ratified the note which she signed and which the plaintiff held. The jury

viewed the matter of duress differently than does the appellant, and we are bound by its verdict, unless error appears.

As to the defendant Jacobs, we find no error and the judgment in her favor for costs is affirmed.

The cross appeal of the defendant Mueller will be noticed only briefly. The trial court expressly refused to approve the findings as to him, set aside most of them so far as he was concerned, and stated, "I really don't believe there is any duress as far as Mr. Mueller is concerned."

We are not going to review the evidence with respect to Mueller, his conduct of the bank, his dealings with other banks, etc. The trial court evidently was not satisfied that a fair trial was had as to Mueller. The allowance of a motion for a new trial is a matter resting in the sound discretion of the trial court, and its action thereon will not be reversed, unless an abuse of such discretion is apparent. (*Bateman v. Preisser,* 123 Kan. 217, 254 Pac. 1028. And see West Digest, Appeal and Error, Nos. 977-979, inc., and Hatcher's Digest, Appeal and Error, No. 458, for other decisions.)

No abuse of discretion has been shown, and the order granting a new trial as to defendant Mueller is affirmed.

HUTCHISON, J., not sitting.