WILL OF BATE: BATE, Claimant, Respondent, vs. FIRST NATIONAL BANK & TRUST COMPANY OF RACINE and another, Executors, Appellants.

*September 13—October 12, 1937.*

For the appellants there was a brief by *Simmons, Walker, Wratten & Sporer,* and oral argument by *Raymond I. Geraldson,* all of Racine.

For the respondent the cause was submitted on the brief of *John H. Liegler* of Racine.

NELSON, J.   The executors assert that the court erred: (1) In deciding, in effect, that a contract was created between the claimant and the deceased by the letter of October 29, 1917; (2) in failing to apply the statute of limitations to the claim based upon such supposed contract; (3) in deciding, in effect, that a contract was created between the claimant and the deceased by the letter of March 26, 1929. These assertions require a statement of the material facts. The claimant, a brother of the deceased, is a bachelor who for many years prior to the year 1917, and ever since, has resided at Flint, Michigan.   For a number of years prior to October 26, 1917, the mother and the incompetent brother of both the claimant and the deceased resided with the claimant.   The claimant supported her and his incompetent brother, although the deceased contributed from time to

time to the support of his mother. The claimant was employed by the Buick Automobile Company. The deceased, at that time, resided at Racine, Wisconsin, where he was apparently successfully engaged in the manufacture of automobile parts and equipment. On October 26, 1917, the mother died. In response to a telegram which informed him of the death of his mother, the deceased wrote to the claimant, and among other things said:

"When I see you we will have a good talk about the future and we will see what we can plan for Walter. Poor Walter we must do what we can for him just what arrangements we can make I cannot think just at present. *We will do all we can, and you can depend upon me to meet any expense that is necessary to make him happy,* be good and kind to him do not let him worry if you can help it."

The deceased attended the mother's funeral at Flint, and on October 29, 1917, before leaving that city wrote a letter to the claimant in which he stated:

"I do hope that you will be successful with getting a good reliable woman to look after your home *and Walter,* also if you are, that you will take your trip East as soon as you can get to it as I know it will do you a lot of good and give you some time to think out your future plans. . . . Now as regards Walter take good care of him see that he is not allowed to go out in the bad weather and get cold or he may give you a lot of trouble. Wish the woman you may get would give him some attention and see that he is kept clean and neat also try and instruct and amuse him during the day, explain how you want this done. Now as far as the expenses incurred for Walter I will see that a check is sent you monthly for $50 this should take care of him and at the same time help you with your housekeeper and if you handle your affairs carefully Walter will not be an expense. Now if you should change your mind and decide that Walter is too much of a care for you do not fail to say so as I am sure we can arrange in some way to have him well cared for. . . ."

Under date of December 1, 1917, the deceased wrote to claimant:

"I am very sorry you was not fortunate enough to get the woman you had hoped to get to look after your house. I hope that you will get some one to do this for you as I know it must be quite a trial for you not to have some one to look after the home during your absence also not to have some one have your meals ready when you return from the factory. I hope both you and Walter are getting along well together also that you are both well."

On December 9th, following, the deceased wrote:

"As regards Walter I will send you a check later in the month for him but cannot do so just now."

On February 26, 1918, the deceased wrote the claimant as follows:

"See that Walter gets plenty of exercise so that he will keep his health try and have him do a little work in the garden during the Spring this will keep him in shape. I am sending you my cheque for $100 to help you on Walter's account and will send you a further sum later and will do so from time to time."

Under date of December 23, 1918, the deceased wrote:

"I also hope that you have a good steady position and that you are able to get a good housekeeper to look after your home. I think it will be much easier to get one now that work in the factories is not so plentiful for women as it was. I hope that you and Walter are enjoying good health and that you will have a very pleasant Christmas and that you will enjoy the year to come. . . . Now I am enclosing you my cheque for $100."

Under date of October 31, 1920, after referring to a contemplated trip east, he wrote:

"At that time I will send you something that will assist you towards the expense you are put to with Walter. I am also very sorry Walter gives you any trouble as I understand from Lou that he does."

The deceased wrote other letters and made other remittances, amounting in all, up to January 1, 1922, to $450. After the latter date no correspondence seems to have been had between the claimant and the deceased until March 26, 1929, when the deceased wrote to the claimant, among other things, as follows:

"Now here is what I have in mind. I am going to arrange to send you $25 each month to help you take care of Walter. I will arrange to send this to you every three months and you will find $75 check enclosed which will make payment from January first, this is not a large amount but will help a little at least or go some of the way to pay your housekeeper's wages."

On July 21, 1931, he wrote:

"Now with reference to my promise to you that I would give you $25 per month payable every three months now George I have not forgotten this promise and you can depend upon my word that I will give you this amount *from the time I made you the promise* and would send you something on account at this time if I could spare it but really I cannot just at this time as I am very short of cash. . . . Now George all I can say at this time is that I am sorry to put you off but please be assured that you will get all or part of what is due you from my promise when things change for the better."

Several letters were produced by the executors from the files of the deceased in which the claimant complained as to the broken promises of the deceased and his failure to pay for Walter's care as agreed. The deceased apparently suffered financial reverses at various times, especially in 1929. At different times the deceased wrote the claimant regarding his financial troubles and inability to keep his promise to the claimant. On November 27, 1931, he wrote, among other things, as follows:

"However, I will be in Racine Monday next and will send you my check at that time. I don't want you to think I am

forgetting my promise to you, however I want you to realize that money matters are just hell at this time as no one seems to have any."

On November 28, 1931, he wrote:

"I wrote you from Cincinnati telling you that I would send you a check account of Brother Walter upon my arrival here. Please find my check enclosed fulfilling my promise. I am sorry I could not do this earlier in the month as it was quite impossible as things are very bad with me at this time, in fact they are just hell and the outlook no better, which means that it will be the latter part of December before I can send you my December allowance. However you can depend upon hearing from me then."

On March 12, 1932, he wrote:

"I now feel disappointed at my not sending you the monthly remittance for our Brother Walter. I am more disappointed than you are and if it had been in my power to have sent the same to you I would have done so, but it was not possible as things are very bad with me."

Other letters written to the claimant were produced containing similar expressions.

The first contention of the executors is that the claimant cannot recover from the estate of the deceased unless a contract or agreement to pay for the care and support of the incompetent be proven. With that contention we agree. In the absence of such an agreement there would be no legal duty on the part of the deceased to support or contribute to the support of his incompetent brother. 32 C. J. p. 685 *et seq.*

The executors next contend that no contract or agreement was proven because the deceased made no offer to the claimant which could ripen into a contract. With this contention we do not agree. The deceased knew that an unfortunate accident had befallen Walter when he was ten years of age that rendered him incompetent thereafter; that ever since that

time Walter had been a great care; that he was cared for and supported first by his father and mother, then by the claimant and his mother up to the time of her death; that the claimant was a bachelor who would have to hire a woman to keep house for him after the mother died if Walter was to be cared for and supported. The deceased unquestionably knew all of these facts and desired to make arrangements for the future care of Walter. Upon the death of the mother he was conscious of his responsibility in the matter. See letter of October 26, 1917. Shortly after writing that letter he attended his mother's funeral and undoubtedly talked over with the claimant the plans for taking care of Walter. Before leaving Flint he wrote the letter of October 29th, in which he expressed the hope that the claimant would be successful in getting a good reliable woman to look after his home and Walter, and that she would give Walter attention, keep him clean and neat, instruct and amuse him during the day, and in which he said:

"Now as far as the expenses incurred for Walter I will see that a check is sent you monthly for $50. This should take care of him and at the same time help you with your housekeeper."

This language certainly amounts to a request that the claimant take care of Walter, and to that end hire a housekeeper to assist in his care. While there is no evidence showing an express acceptance of the proposal of the deceased, that was not necessary.

"The manifestation of mutual assent may be made wholly or partly by written or spoken words or by other acts or conduct." Restatement, Contracts, § 21.

"An offer may invite an acceptance to be made by merely an affirmative answer, or by performing or refraining from performing a specified act. . . ." Restatement, Contracts, § 29. See also numerous Wisconsin cases cited in Wisconsin Annotations to Restatement, Contracts, §§ 21 and 29.

In response to the request of the deceased that the claimant care·for Walter, the claimant did employ a housekeeper, and did care for·Walter in his home. ·Such performance with the knowledge of the deceased was tantamount to a formal acceptance. That an agreement was intended to be made is corroborated by the demands made from time to time by the claimant upon the deceased to pay according to his promise and agreement, and the utter failure of the deceased to deny the obligation which the claimant asserted was his. We are of the opinion that the evidence warrants the conclusion that on or about October 29, 1917, a contract was entered into wherein and whereby the claimant agreed for an indefinite time to care for and support Walter, for which care and support the deceased was to pay him $50 per month.

The executors also contend that no·contract arose out of the letter of March 26, 1929. As to this contention we are of the opinion that the reasoning adopted by us in ruling that a contract resulted from the letter of October 29, 1917, is applicable. In our view, the proposal contained in the letter of March 26, 1929, acquiesced in by the claimant without protest or objection, resulted in a modification by the parties of the original contract. The claimant at the time of receiving the letter was fully advised as to the changed financial condition of the deceased, and was apparently willing to continue to support and care for Walter, assisted by the deceased to the extent of the promised payments of $25 per month. He was fully conscious of the declared inability of the deceased to perform the original agreement. The conclusion that the original contract was intended to be modified is corroborated by the fact that in the verified claim filed by the claimant he claimed only $25 per month for all of the months subsequent to October 29, 1929.

The trial court, in our opinion, after finding that contracts for the support of Walter had been entered into, erred in ignoring the compensation which the deceased agreed to pay to the claimant, and in finding that $25 per month was the

reasonable value of the services rendered by the claimant from 1917 on. The court was not warranted in ignoring the amount of $50 which the deceased agreed to pay under the 1917 contract.

The executors further contend that even if a contract was entered into in 1917, the claimant had no present claim against the estate because all of the promised payments accrued long prior to six years before the death of John W. Bate, and are therefore barred by the statute of limitations. As to the payments which accrued prior to six years before the death of the deceased, it is our opinion that they are barred by the statute of limitations. Sec. 330.19. There is no evidence in the record of any written promise after 1929 to pay the whole debt, and it appears without dispute that from 1922 to 1929, a period of over seven years, no correspondence at all was had between the claimant and the deceased, and during that time no payment was made by the deceased. At all times after 1917, the deceased resided continuously at Racine, within the state of Wisconsin, to the knowledge of the claimant. It therefore appears that the claimant slept on his rights and let the statute of limitations of this state run on all of his claims which accrued prior to six years before the death of the deceased. It is generally held, in the absence of statutes to the contrary, that an action brought in a state other than that where the contract was made is subject to the statutes of limitation of the state of the forum. Section 603, Restatement, Conflict of Laws, provides:

"*Statute of limitations of forum:* If action is barred by the statute of limitations of the forum, no action can be maintained though action is not barred in the state where the cause of action arose."

But as to the monthly payments which accrued within the six years prior to the death of the deceased, we are of the opinion that they are not barred by the statute of limitations.

*By the Court.*—The judgment of the county court is reversed, with directions to redetermine and restate the amounts due the claimant in accordance with the opinion, and to enter judgment in favor of the plaintiff and against the estate of John W. Bate, deceased, for the amount so found to be due.