80 So.2d 657 (1955)
Gertrude L. ISAACS, as Executrix of the Estate of Edward McClosky, Deceased, Appellant,
v.
Fay DEUTSCH, formerly known as Freda McClosky, Appellee.
Supreme Court of Florida. En Banc.
April 29, 1955.
Rehearing Denied June 20, 1955.
Buckley, Windle & Bland, Fort Lauderdale, for appellant.
Irwin J. Block, Miami, for appellee.
ROBERTS, Justice.
The plaintiff filed suit in the court below against the defendant, as executrix of the estate of Edward McClosky, deceased, to recover on a contract executed in 1928 by the plaintiff and the defendant's decedent, and the defendant has appealed from an adverse judgment.
The contract sued upon provided that in consideration of the payment of $50 and the promise of the decedent to pay $15 per week, commencing March 10, 1928, to the plaintiff for the support and maintenance of the minor child of the parties, the plaintiff surrendered any and all claims which she might have had against the decedent by reason of a former relationship of husband and wife or otherwise which existed between the parties. Only a few payments were made under the agreement. The parties were divorced at a time not shown by the record. The minor child attained his majority in 1947, and the decedent died in 1952. The suit on the contract was filed in 1953, seeking to recover from the decedent's estate the total principal amount of $14,000, representing payments accruing during the period of time from 1929 to *658 1947. It was alleged that the decedent had, in the years 1946 to 1950, acknowledged the debt and promised to pay it. The defense of the statute of limitations was pleaded, to which the plaintiff replied that the defendant was estopped from raising the defense of the statute and that the decedent had been out of the state for a portion of the time covered by the contract.
The lower court, at the close of all the evidence, directed the jury to return a verdict in favor of plaintiff in the amount of $14,000, basing his ruling on the fact that the contract "was a continuing obligation, that the right to sue for the entire business commenced when this man reached his majority, and it was tolled when he [the decedent] died * * *." (Emphasis added.)
The only point which this court is asked to decide is the question of when the statute of limitations, Section 95.11(3), Fla. Stat., F.S.A., began to run on the payments due and unpaid under the contract. The defendant's position is that it began to run at the time each weekly payment was due thereunder, so that the liability of the decedent's estate is limited to unpaid installments which fell due within five years next preceding the death of the decedent and prior to the time that the minor child became twenty-one years of age. The plaintiff's contention is that the contract was a continuing obligation upon which the statute of limitations first began to run on all the unpaid weekly payments at the date the son attained his majority, as held by the lower court. This court has not heretofore been called upon to decide this question.
There can be no doubt that the obligation of the father to support his minor children is a "continuing" one, as contended by plaintiff. It exists irrespective of a divorce decree awarding their custody to the mother. Bezanilla v. Bezanilla, Fla., 1953, 65 So.2d 754. It may be enforced by the courts in a manner inconsistent with a contractual obligation such as that assumed by the father in the instant case. Nelson on Divorce and Annulment, 2d Ed., Sec. 15.58, p. 264. It may form the basis of a quasi-contract, implied by law, to compel the father to pay for the support and maintenance of his minor child by a third party, or by the mother after a divorce from the father, Ibid., Sec. 15.60, p. 266, and is sufficient consideration for an express contract to do the same. But the fact that the legal obligation is a continuing one is not, in our opinion, decisive of the precise question here presented. We are not here concerned with enforcing the father's obligation to support his children in the future; the question here has to do with the collection of a debt arising out of a contractual obligation assumed by the father.
We have noted the cases cited by plaintiff in which it has been held that, as to an express contract which provides in general terms for the support and maintenance of a child over an extended period of time without specifying any time for or rate of payment, the statute of limitations does not begin to run thereon until its termination, that is, the date the child reaches his majority. Myers v. Saltry, 1915, 163 Ky. 481, 173 S.W. 1138; Jackson v. Mull, 6 Wyo. 55, 42 P. 603, 604; Rockwood v. Stubenhofer, 1925, 119 Kan. 307, 239 P. 993; Gaskins v. Security-First Nat. Bank of Los Angeles, 30 Cal. App.2d 409, 86 P.2d 681; Carroll v. McCoy, 40 Iowa 38; Linneman v. Kirchner, 189 Iowa 336, 178 N.W. 899. The same rule has been applied to the quasi-contractual obligation to support which is implied by law. Knutson v. Haugen, 1934, 191 Minn. 420, 254 N.W. 464, 465. These decisions are apparently based on the "continuing obligation" theory, as expressed by the Minnesota court in the Knutson case in the following language:
"Is there, then, any distinction so far as the statute of limitations is concerned between the quasi contractual obligation here under consideration and an expressed contract or one implied from conduct, where no terms are fixed as to the termination of the contract or as to the manner of payment. Certainly the law fixes no time for periodical payment or any time for the termination *659 of the parent's obligation other than the majority of the minor. * * * No time being fixed for the payment or for the termination of the obligation until the majority of the minor was reached, any obligation imposed upon the defendant by law was not from month to month or year to year but was entire and continuing and terminated at majority. The plaintiff was at liberty to so treat it and defer action until then."
A contrary view was taken in Haimes v. Schonwit, 268 App.Div. 652, 52 N.Y.S.2d 272, 275, in which the New York court allowed recovery only for those claims accruing within the statutory limitation period of six years, its reasons therefor being stated as follows:
"Whatever may be the implied due date of payment, it is binding on both parties. The basic principles of mutuality of obligation * * * precludes acceptance of the theory, advanced in some of the authorities of other states, that in the class of contracts with which we are presently concerned, the due date is not the same for the father as it is for the claimant, to the end that the latter may shift it to an early date, to obtain prompt payment, or to a later date, to avoid the Statute of Limitations, which ever better may subserve his interests. We disagree, therefore, with the determination in Knutson v. Haugen, 191 Minn. 420, 254 N.W. 464, in so far as it is therein held that one seeking recovery on an express contract to support a child during minority is afforded an option to declare payment due at any time during minority and that the same option prevails in the case of an implied contract to pay for such maintenance. Incidental to a father's general and continuing obligation to support his child, a promise imputed to him to reimburse another who assumes that obligation for him is to make immediate payment. * *"
We are here dealing, however, with a contract entirely different from those with which the courts were concerned in the above cited cases. Here, the contract requires the father to pay a definite sum at specified intervals for the support of his child. There has been cited and our research has revealed only one case in which it has been held that the plaintiff could defer suit on all unpaid instalments due under such a contract, regardless of the limitation period, until the termination of the contract. In Wisniewski v. Wisniewski's Estate, 254 Mich. 663, 236 N.W. 899, a claim was made against the estate of the deceased father for the care and maintenance of his daughter for a ten-year period under an oral agreement by the deceased to pay $5 a week for her support. As against the contention that a portion of the claim was barred by the six-year limitation statute, the court said:
"Under the alleged contract the pay at the rate of $5 per week was for a continuous service which was rendered and not closed until within six years before presentation of the claim. The point is without merit. Carter v. Carter, 36 Mich. 207."
Reference to Carter v. Carter, supra, shows that in that case the claim was upon a contract of employment in which no definite time of employment was fixed nor a price for the services agreed upon. In holding that the statute of limitations did not begin to run until the agreement was terminated the court said:
"The mutual assent for the continuance of the service, and the yielding of the service under the arrangement, ceased at the same time; and while in course of being rendered the service was upon the agreement and in performance of it, and was not the subject of account, and it afforded no accrued and matured right to be affected by the statute of limitations." (Emphasis added.)
Thus, the court must have construed the agreement in the Wisniewski case as not requiring payment of the compensation, at the rate of $5 per week, until the termination of the entire contract. We do not so *660 construe the contract with which we are here concerned. It unequivocally requires the payment of $15 "on the 10th day of March 1928, and a like sum of Fifteen Dollars ($15.00) payable each week thereafter for the support and maintenance of minor child." In all other cases which have come to our attention, where an agreement for the support of minor children or other persons fixes a definite amount to be paid thereunder at stated intervals, it has been held that the cause of action accrues and the limitations statute starts running on each payment required to be made thereunder as it becomes due. See Van Sciver v. Van Sciver, 1940, 337 Pa. 390, 12 A.2d 108 (settlement agreement for support of wife and children); Maxwell v. Maxwell, Tex., 1947, 204 S.W.2d 32 (settlement agreement for support of child); Harding v. Mitchell, 202 Ill. App. 442 (agreement to pay $5 per month for support of child); Harned v. Layman, 1940, 283 Ky. 460, 141 S.W.2d 857 (agreement for specific monthly payments to support invalid sister); In re Bates Will, 1937, 225 Wis. 564, 275 N.W. 450 (agreement to pay $50 per month for support of invalid brother).
Corbin in his work on Contracts, Sec. 956, says that
"Clear analysis indicates that there is no essential difference between a `continuing' contract and an `instalment' contract. * * * The conclusion to be drawn is that the supposed classification of certain contracts as `continuing' renders no service and probably operates to dim or to conceal the true reasons on which a decision is or ought to be based."
Whatever may be the "true reason" for the decisions of the courts, cited above, respecting contracts for support, express or implied, in which there is no promise to pay a definite sum at a specified time, they are not controlling here, where the agreement is otherwise. And we think it is much more logical to hold that in a case such as this, as in the case of an obligation payable by instalments, "the statute of limitations runs against each instalment from the time it becomes due; that is, from the time when an action might be brought to recover it." 34 Am.Jur., Limitations of Actions, Sec. 142, p. 114. As has been noted, this is in accord with the great majority of cases from other jurisdictions involving similar contracts. And, by analogy, it accords with the view taken by most of the courts throughout the country that where the father's "continuing obligation" to support his child is transformed into a decree of court requiring instalment payments of support money, the statute of limitations begins to run as against each instalment as it becomes due, and only from that time. See cases cited in annotation in 137 A.L.R. beginning at page 890.
We hold, then, that where an express contract requires the father to pay a definite sum at stated intervals for the support of his minor child, the statute of limitations starts running against each payment as it becomes due; and that the lower court erred in allowing recovery for all weekly payments solely on the ground that the statute did not start running on such payments until the time of the termination of the contract, that is, the date when the minor child attained his majority. The issues as to the tolling of the statute because of the decedent's absence from the state and as to whether there was an estoppel to plead the statute of limitations were not decided in the lower court and were not presented in this appeal and are not decided here.
For the reasons stated, the judgment appealed from is reversed and the cause remanded for further proceedings consistent herewith.
Reversed and remanded.
MATHEWS, C.J., and HOBSON and DREW, JJ., concur.
TERRELL and THOMAS, JJ., and SANDLER, Associate Justice, dissent.
*661 TERRELL, Justice (dissenting).
The gist of this controversy is a contract between appellee and Edward McClosky executed in 1928, wherein McClosky agreed to pay appellee a specified sum each week beginning March 10, 1928, for support and maintenance of their minor child. The parties were divorced at some time not disclosed by the record. Payments were made on the contract for about one year, the minor became of age in 1947, McClosky died in 1952 and this suit was instituted against McClosky's estate in 1953 to recover payments on the contract that accrued from 1929 to 1947. The lower court directed a verdict for the plaintiff in the sum of $14,000, the amount sued for.
The majority opinion reversed this judgment on the theory that the statute of limitations, Section 95.11(3) F.S., F.S.A., starts running against each weekly payment as it becomes due. Under this holding recovery can be had only for payments that accrued within five years from the date this action was brought. Van Sciver v. Van Sciver, 337 Pa. 390, 12 A.2d 108; Maxwell v. Maxwell, Tex.Civ.App., 204 S.W.2d 32; Harding v. Mitchell, 202 Ill. App. 442; Harned v. Layman, 283 Ky. 460, 141 S.W.2d 857; In re Bates Will, 225 Wis. 564, 275 N.W. 450, and perhaps others are relied on to support the reversal. In none of the cited cases did the court have before it an obligation for support of a minor child. Some of them are based upon the breach of a written property settlement agreement made in contemplation of divorce but none of them involve the direct point involved in this case.
The cases recognize a clear distinction between contracts for single items of expense and those involving a continuing liability like that to support a minor. As to the former, the statute of limitations runs from the furnishing of the items, each being considered as a separate account, but as to the latter the statute of limitations runs from the time the obligations mature. The contract in question belongs to the latter class. It provides for the payment of $15 "on the tenth day of March 1928 and a like sum of fifteen dollars ($15.00) payable each week thereafter for the support and maintenance of minor child."
The complaint, inter alia, alleges that the deceased repeatedly recognized his obligation to the plaintiff for support of his child and that from 1946 or 1947 up to and including 1949 or 1950, on consideration of the plaintiff not instituting suit against him and in consideration of his moral obligation to pay the debt, he promised and agreed with the plaintiff that he would pay her in full. On account of these promises plaintiff repeatedly indulged defendant but after his death she was forced to bring this action against his estate to recover on the contract. Another very important element of this contract was that in consideration of said weekly payments defendant would be discharged from any and all claims of plaintiff against defendant, including claims for alimony, suit money or on account of any and all legal obligations which may be due her as mother or next friend of the child. There is no suggestion that the contract was not performed by the plaintiff.
Plaintiff contends, and I think properly so, that her contract is a continuing one and that the statute of limitations begins to run on all weekly payments from the date the minor child reached his majority. This is certainly the sound view and the one that comports with right and justice. The contract was one to furnish labor and rations and this Court has held that such a contract provides a continuing right, the statute of limitations against which does not begin to run till the labor is completed or demand is first made for payment. Smith v. Chapman, 116 Fla. 576, 156 So. 544. Mechanic's lien contracts for labor and materials furnished are to the same effect.
The vice of the majority opinion is that it leads to an unjust conclusion in that it makes it impossible for appellant to realize anything for most of her labor and materials. To realize on such a contract, if the majority view is to prevail, one would have to bring a suit on each weekly payment. None of the cases cited in support of the majority opinion involves contracts for child support. To recover on contracts like *662 that confronting us here, Williston on Contracts, Sec. 2028, page 5691, summarizes the law as follows:
"To compel the injured party, in order to protect his rights, to bring actions from time to time is undesirable. It has been held accordingly under such circumstances that a plaintiff may recover damages based on the entire performance due from the defendant, at any time before the statute has run from the time when the last part of the performance was due."
See also 37 C.J., Limitations of Actions, § 213, page 853; 54 C.J.S., Limitations of Actions, § 152; and 23 Abbott New York Digest, Cumulative Annual Pocket Part, Limitation of Actions, 50(4), where the law is stated as follows:
"The duty imposed by law upon a father to support his child is a continuing one and terminates only at majority of child or death of father, and the statute of limitations does not run during time child requires such support, but commences to run from the time the obligation terminates."
Rockwood v. Stubenhofer, 119 Kan. 307, 239 P. 993; Myers v. Saltry, 163 Ky. 481, 173 S.W. 1138; and Wisniewski v. Wisniewski's Estate, 254 Mich. 663, 236 N.W. 899, deal with cases similar to this and support the view herein expressed. While we have not been confronted with a case exactly in point no other deduction can in justice be reached from an examination of collateral decisions. After all is said, the question is one of interpretation and that imposed here reaches a just conclusion. This is the most important factor of the judicial process, for as said by one of the great craftsmen of the law: "When justice is gone it is no longer important that men live on this earth."
I therefore dissent.
THOMAS, J., concurs.
SANDLER, Associate Justice (dissenting).
The contract which was a stipulation in the divorce suit did not add to nor subtract from the obligation of the father to support his minor child, which obligation continued until such minor child reached his majority. The Court had ample authority to require the father to furnish such support without any stipulation or agreement of the parties. The stipulation here involved merely provided for the amount and method of payment, which was subject to modification by the Court at any time. The obligation of the father is continuing support which cannot be bargained nor stipulated away by parents so as to deprive the minor of the benefit thereof. Accordingly, I am in accord with the opinion of Mr. Justice TERRELL and concur therein.