Sol SEGALL, Plaintiff-Appellant,

v.

Max HURWITZ, Peter J. Miller, Archie D. Horne, Jr.,
David B. Hoff, Roger K. Gaumnitz, Opitz Realty,
Inc., and The Park Bank, Defendants-Respondents.

Court of Appeals

*No. 81–1816. Submitted on briefs January 13, 1983.—
Decided June 27, 1983.*

474

For the plaintiff-appellant the cause was submitted on the briefs of *Michael R. Fox* and *Fox & Crandall* of Madison.

For the defendants-respondents Peter J. Miller and Archie D. Horne, Jr., the cause was submitted on the brief of *Fred A. Risser* and *Risser & Risser* of Madison.

For the defendant-respondent David B. Hoff, the cause was submitted on the brief of *James A. Lagodney* and *Loeb, Ching & Lagodney, S.C.* of Madison.

For the defendant-respondent The Park Bank, the cause was submitted on the brief of *James R. Cole, Kathryn L. Norton* and *Beverly R. Reding* and *Ross & Stevens, S.C.* of Madison.

Before Gartzke, P.J., Foley, J., and W.L. Jackman, Reserve Judge.

GARTZKE, P.J.   Plaintiff Segall appeals from a summary judgment dismissing his complaint against Peter Miller, Archie Horne, Jr., David Hoff, Roger Gaumnitz, Max Hurwitz and The Park Bank. We conclude that the trial court erred in applying the statute of limitations to bar claims against Miller and Horne. We reverse the judgment and remand for further proceedings as to those claims and otherwise affirm.

This action was commenced May 23, 1979 when Segall's complaint was filed. It expressly sets forth six separately stated claims for relief. It alleges two claims for breach of a contract by which Segall purchased a railroad salvage business known as "Miller's General Merchandise" from Miller and Horne. Under that contract, Segall acquired the right to use the name "Miller's General Merchandise" and Miller and Horne agreed not to compete with the business in Dane County for five years. Segall alleged that Miller and Horne violated his right to use the name and the agreement not to compete.

The remaining separately stated four claims pertain to a conspiracy among all the defendants. Segall alleges that the defendants conspired to: (1) defraud him; (2) injure his business reputation; (3) interfere with his contractual relations with defendant Park Bank and the Borden Company; and (4) prevent him from competing in the railroad salvage business in violation of state and federal antitrust laws.

Defendants' answers consist of general denials and plead the statute of limitations. The trial court held that the longest of the statutes of limitation applicable to the claims alleged is six years, citing secs. 893.93 (1) (a), 893.93 (1) (b) and 893.53, Stats. It held on the basis of defendants' motions for summary judgment that six years had run on each claim and therefore dismissed the complaint.

Summary judgment methodology is described in *Grams v. Boss,* 97 Wis. 2d 332, 338–39, 294 N.W.2d 473, 476–77 (1980). We need not repeat it or apply its initial steps. It is undisputed that the complaint states claims for relief (although a dispute exists whether a seventh claim is adequately pleaded) and that the pleadings show that factual issues exist. To support their motions for summary judgment, the defendants have collectively shown by affidavit that over six years elapsed between their acts, as alleged in the complaint, which were arguably tortious and May 23, 1979, when Segall filed this action. The trial court assumed that the facts averred by Segall in his opposing affidavit were true and held that his claims were barred by the statute of limitations.

We agree with Segall that the first issue on appeal is a legal question: whether the trial court correctly applied the statute of limitations to the facts alleged by him and supported by his exhibits and affidavits. We proceed first to his conspiracy claims and then to his contract claims.

1. *Conspiracy Claims*
A. *Facts*
Segall's affidavit describes the following uncontroverted factual history relevant to his four conspiracy claims, a history we assume is true for summary judgment analysis:

When Segall bought the salvage business, he needed a new location for its operations. For that purpose, he and Hurwitz, as joint venturers, offered to buy the Borden building in Madison for $140,000. The Borden Company accepted their offer October 4, 1972.

Hoff, then executive vice-president of the Park Bank, told Segall October 18, 1972 that the bank could give him a $50,000 line of credit. Segall told Hoff he needed $25,000 on a sixty-day note. Segall signed the note that day. The note was due December 18, 1972 and was secured by Segall's other Park Bank accounts.

At the request of Segall and Hurwitz, October 16, 1972 Gaumnitz, a real estate broker affiliated with Opitz Realty,[1] appraised the Borden building at $210,000. October 30, 1972 Gaumnitz offered to purchase the building from the Borden Company for $155,000. November 13, 1972, at the request of Roger Koby, whom plaintiff describes as an unnamed co-conspirator, Gaumnitz appraised the Borden building as an office facility at $690,000.

November 14, 1972 the Park Bank improperly closed a number of Segall's accounts without his knowledge or authorization. It reopened the accounts a short time later. November 15, 1972 Segall and Hurwitz accepted Koby's offer to purchase the Borden building from them for $175,000, contingent on their negotiating a leaseback arrangement which would permit Segall to use part of the building for his business. November 17, 1972 Hoff signed an affidavit alleging that Segall had defrauded the bank, in support of an order requiring Segall to show cause why his business should not be put into receivership.

[1] Opitz Realty, Inc. was named as a defendant in the complaint but was subsequently dismissed with prejudice by stipulation among the parties.

On or about November 19, 1972 Segall discovered writings by Hurwitz which indicated he had conspired with the other defendants to defame and force Segall to release his interest in the Borden building. November 20, 1972 Hoff called the $25,000 note on grounds that the Park Bank deemed itself insecure.

Hoff and Koby attended Segall's November 22, 1972 closing on the Borden building. Hoff told Segall at the closing that the Park Bank would not finance Segall's purchase of the building unless Segall immediately turned the building over to Koby. Segall and Koby could not work out a satisfactory leaseback arrangement, and the closing was aborted.

November 24, 1972 the Park Bank commenced receivership proceedings against Segall, based on Hoff's affidavit. November 26, 1972 Hurwitz physically attacked Segall at his office, demanded he surrender Hurwitz' writings he had found, and threatened him with a knife.

Segall told Hoff that he could not appear at the initial receivership hearing set for December 1, 1972. Because Hoff told him that nothing would happen at the hearing, Segall did not attend. Hurwitz, however, was appointed receiver at that hearing, although he had no experience in running a railroad salvage business. At least twice during the receivership the Park Bank offered and then failed to extend credit to Segall to remedy his financial situation. December 21, 1972 the receiver sold the physical assets of Segall's business to Horne, who was doing business with Miller. During the receivership, Miller and Hurwitz told Segall that Miller, Hurwitz, Hoff and the Park Bank would stick together to run him out of town.

In January 1973 Miller signed a criminal complaint falsely charging Segall with threatening to bomb Miller's home. All the defendants concurred in Miller's action. Hurwitz told the other defendants that the criminal

charge would force Segall to sign off his interest in the Borden building. Miller and Hurwitz told Segall that Miller would drop the charge if Segall released his interest in the Borden building and convinced Segall's father to cancel a $10,000 personal note Hurwitz had signed. Hurwitz told Miller that his wife would file another charge to exert more pressure on Segall. Miller testified falsely at the criminal trial that nobody would do business with Segall and that Segall had threatened to bomb Miller's home to force him to invest in a business Segall owned. Segall was acquitted of the criminal charge October 5, 1973.

In January 1973 Hurwitz and Miller told certain of Segall's business associates that Segall was dishonest and crazy.

Koby sued Segall to acquire the Borden building. May 24, 1973 the Dane County court ordered Segall to sell the Borden building to Koby. A judgment entered in 1974 assigned Segall's interest in the building to Koby.

During 1973 Miller, Hurwitz and Hoff made false statements about Segall to the Wisconsin Real Estate Examining Board. The board temporarily suspended Segall's license on August 22, 1973. During the board's investigation Hurwitz told Segall that he would drop the charges before the board if Segall would convince his father to cancel the $10,000 note. The board reinstated Segall's license sometime in 1975.

Hurwitz unsuccessfully sued Segall's father to cancel the note. October 21, 1975 the case went to trial. Hurwitz falsely testified that Segall was dishonest and had tried to swindle Hurwitz. Miller falsely testified that he did not own Miller's General Merchandise when it was sold to Segall and made other defamatory remarks concerning Segall's ability to pursue his trade and occupation.

B. *Accrual Of Cause Of Action*

Section 893.04, Stats., provides, "Unless otherwise specifically prescribed by law, a period of limitation within which an action may be commenced is computed from the time that the cause of action accrues until the action is commenced." No statute defines "the time that the cause of action accrues."

Segall contends that a new cause of action accrues from the date of each act in furtherance of a civil conspiracy causing damage to the victim. He asserts that defendants committed acts in furtherance of the conspiracy within six years from the date he commenced this action, and therefore he is entitled to damages for all acts of the conspirators, including those committed more than six years ago. He contends that because his acquittal on the criminal charges occurred within the six-year period, the court erred when holding that his claim of malicious prosecution (which Segall asserts he pleaded) was barred by the statute of limitations.

The trial court concluded that the first injury inflicted as a result of a civil conspiracy starts the statute of limitations to run, relying on *Baldwin v. Loew's Incorporated*, 312 F.2d 387 (7th Cir. 1963), and therefore the conspiracy claims are barred by a six-year statute of limitations. Noting Segall's contention that acts in furtherance of the conspiracy, and resulting injuries, occurred within the six-year period, the court held that the running of the statute of limitations was not affected. Accordingly, the court concluded that all Segall's claims under the conspiracy are outlawed.

An analysis based on *Baldwin* is faulty. *Baldwin* does not address the issue when the statute of limitations begins to run on separate claims arising out of the same conspiracy. *Baldwin* dealt with additional damages which occurred from a single injury from a single wrongful act, a violation of federal antitrust laws.

To identify the date of accrual, we identify the wrong.[2] A conspiracy may produce one or more torts. If it does, then every conspirator is liable for that tort, including a conspirator who promoted but did not commit the tort. A conspiracy is not, itself, a tort. *Onderdonk v. Lamb*, 79 Wis. 2d 241, 246, 255 N.W.2d 507, 509 (1977). It is the tort, and each tort, not the conspiracy, that is actionable. *Id.*

[I]t is clear that the mere agreement to do a wrongful act can never alone amount to a tort, whether or not it may be a crime; and that some act must be committed by one of the parties in pursuance of the agreement, which is itself a tort. "The gist of the action is not the conspiracy charged, but the tort working damage to the plaintiff." It is only where means are employed, or purposes are accomplished, which are themselves tortious, that the conspirators who have not acted but have promoted the act will be held liable.

Prosser, *Handbook of the Law of Torts* at 293 (4th ed. 1971) (footnotes omitted), quoting *James v. Evans*, 149 F. 136, 140 (3d Cir. 1906).

The trial court erred when concluding that all claims for injuries arising out of a conspiracy accrue when the plaintiff is first injured. Because a conspiracy (other

---

[2] Identifying the wrong should be the proper approach to fixing the date the cause of action accrues for purposes of the statute of limitations. The problem of identifying the wrong may underlie the case law confusion among other jurisdictions. According to the author of Annot., *When Does Statute of Limitations Begin to Run Against Civil Action or Criminal Prosecution for Conspiracy*, 62 A.L.R.2d 1369, 1385 (1958), "The cases. involving the running of limitations against so-called civil actions for conspiracy present a melange of inconsistent, irreconcilable, even contradictory statements of general 'rules' relating to the subject. This is, perhaps, not surprising in view of the vague, poorly defined scope of this kind of civil suit." (Footnote omitted.)

than a violation of sec. 134.01, Stats.) is not itself a tort, the date when a plaintiff is first injured by an act arising out of that conspiracy is not determinative. We look to each tort Segall claims occurred to determine when the cause of action accrued. The date of the first injury from each tortious act is the date on which the cause of action accrues as to that tort. *Boehm v. Wheeler,* 65 Wis. 2d 668, 677, 223 N.W.2d 536, 540 (1974). (The only exception to that analysis, for purposes of this case, is a malicious prosecution claim.) Consequently, the applicable statute of limitations runs from that date as to each tort.

We apply that analysis, even though later injuries may have occurred after the date of the first injury. A later injury from the same tortious act does not restart the running of the statute. *Olson v. St. Croix Valley Memorial Hospital,* 55 Wis. 2d 628, 634, 201 N.W.2d 63, 65 (1972).

Because a conspiracy (other than a conspiracy in violation of sec. 134.01, Stats.) is not a tort, and because each tort committed as part of a conspiracy is treated separately to compute the period in which an action must be commenced, one tort committed in furtherance of the conspiracy does not affect the running of the statute on other torts. As a result, a tort committed by a conspirator within the statutory period does not rejuvenate another tort, an action on which is barred.

We reject Segall's contention that we should adopt the California rule, under which the statute of limitations does not begin to run until completion of the "last overt act" in furtherance of a conspiracy. *Wyatt v. Union Mortg. Co.,* 598 P.2d 45, 53 (Cal. 1979). The California rule is inconsistent with Wisconsin case law: that a conspiracy is not a tort. The significance of the conspiracy is that it permits plaintiff to join all defendants in one action and hold them jointly and severally liable. *See*

*Michels v. Michels,* 240 Wis. 539, 545, 3 N.W.2d 359, 361 (1942) (joint and several liability among coconspirators).

Accordingly, we proceed to examine the facts relevant to each tort claim arising out of the conspiracy to determine when the cause of action accrued, and measure that date against the date this action was commenced, May 23, 1979.

1. *Antitrust Claims*

Plaintiff does not specify which antitrust statutes defendants allegedly violated. The statute of limitations for all private damages claims under the federal antitrust statutes, however, is four years. 15 U.S.C. sec. 15b; *Zenith Radio Corp. v. Hazeltine Research,* 401 U.S. 321, 338 (1971).

We apply federal law to determine when a claim accrues under federal antitrust statutes. *Gaetzi v. Carling Brewing Company,* 205 F. Supp. 615, 618 (E.D. Mich. 1962). A cause of action for federal antitrust violations accrued when the conspiracy forced Segall out of business. *See Poster Exchange, Inc. v. National Screen Serv. Corp.,* 517 F.2d 117, 126–27 (5th Cir. 1975), *cert. denied,* 423 U.S. 1054 (1976) (dictum) (cause of action for continuing antitrust violations accrues when business is immediately and permanently destroyed) ; *Curtis v. Campbell-Taggart, Inc.,* 687 F.2d 336, 337–38 (10th Cir.), *cert. denied,* —— U.S. ——, 74 L. Ed. 2d 937 (1982) (applying *Poster Exchange* dictum). Segall's federal antitrust claims therefore accrued at the latest when the business assets were sold pursuant to the receivership proceedings in December 1972. Accordingly, a federal antitrust claim is barred.

Selgall's state antitrust claim can be characterized as one for damages caused by an unlawful conspiracy in

restraint of trade under sec. 133.01, Stats. 1977.[3] Treble damages are recoverable under this statute. Because the suit is for a statutorily created penalty, the statute of limitations for state antitrust claims under sec. 133.01, Stats. 1977, is sec. 893.21(1), Stats. 1977,[4] which provides a two-year statute of limitations. *Open Pantry Food Marts v. Falcone,* 92 Wis. 2d 807, 811, 286 N.W.2d 149, 152 (Ct. App. 1979). The injury occurred and the claim accrued no later than when the conspiracy forced Segall out of business. Because the claim accrued at the latest in December 1972, more than two years prior to the commencement of the action, the state antitrust claim is barred.

2. *Injury To Business Reputation*

Segall alleged that the conspirators willfully and maliciously made false statements to third persons and during judicial proceedings to injure his business reputation. False statements made to injure a business reputation are actionable as defamation claims. *Converters Equipment Corp. v. Condes Corp.,* 80 Wis. 2d 257, 263, 258 N.W.2d 712, 715 (1977).

Segall, however, characterizes this claim as one for damages resulting from a conspiracy to injure his business reputation, actionable under sec. 134.01, Stats.[5]

---

[3] Chapter 133, Stats. 1977, was repealed and recreated by sec. 2, ch. 209, Laws of 1979, effective May 8, 1980.

[4] Because this action was commenced May 23, 1979, and all claims asserted accrued prior to that date, the claims are controlled by the appropriate sections of ch. 893, Stats., in effect when the claim accrued. *See* sec. 991.07, Stats. (absent express statutory direction to the contrary, statute of limitation governing a claim is that in effect when the claim accrued). Accordingly, the provisions of ch. 893, as repealed and recreated by sec. 28, ch. 323, Laws of 1979, effective July 1, 1980, do not affect this action.

[5] Section 134.01, Stats., provides:

Any 2 or more persons who shall combine, associate, agree, mutually undertake or concert together for the purpose of wilfully or

Defendants contend that if an action, however characterized, is based on defamatory statements, it will be regarded as defamation and is subject to the statute of limitations on a defamation claim. *See Scott Paper Company v. Fort Howard Paper Company,* 343 F. Supp. 229, 231, 235 (E.D. Wis. 1972) (claim for "unfair trade practices and unfair competition" under Wisconsin law controlled by defamation statute of limitations); *Cordova v. Gutierrez,* 23 Wis. 2d 598, 604–05, 128 N.W.2d 62, 65–66 (1964) (claim for "injurious falsehood" controlled by defamation statute of limitations).

Although the coconspirators' statements might be actionable as defamation, a separate claim exists for a violation of sec. 134.01, Stats. In *Radue v. Dill,* 74 Wis. 2d 239, 245, 246 N.W.2d 507, 511 (1976) (citations omitted), the court said that on "numerous occasions, this court has held that if a violation of the criminal statute sec. 134.01, Stats., causes damage to a person, a cause of action accrues to him for such a violation." To have an actionable claim under sec. 134.01, a plaintiff need only demonstrate that "the defendants conspired for one of the purposes proscribed by sec. 134.01 and thereby caused damage to the plaintiff." *Id.* If the conspiracy "has for its purpose the doing of an unlawful act, the means, as regards whether they are in themselves actionable civilly or criminally, are not material." 74 Wis. 2d at 244, 246 N.W.2d at 511.

Segall alleges that the defendants conspired to injure his business reputation and alleges injury from that conspiracy. He has therefore alleged an actionable violation

maliciously injuring another in his reputation, trade, business or profession by any means whatever, or for the purpose of maliciously compelling another to do or perform any act against his will, or preventing or hindering another from doing or performing any lawful act shall be punished by imprisonment in the county jail not more than one year or by fine not exceeding $500.

of sec. 134.01, Stats., whether or not the means used to injure his business reputation constituted defamation. It is the conspiracy to injury Segall's business reputation and the damage which results from the conspiracy, not the means used, that constitute an actionable claim under sec. 134.01. The claim based on a conspiracy to injure Segall's business reputation in violation of sec. 134.01 is not the equivalent of a defamation claim and is not controlled by the defamation statute of limitations.

No specific statute of limitations applies to private claims for violation of sec. 134.01, Stats. The claim is therefore controlled by sec. 893.19(4), Stats. 1977, which provides a six-year statute of limitations in actions "upon a liability created by statute when a different limitation is not prescribed by law."

Because under sec. 134.01, Stats., it is the conspiracy for the proscribed purpose and not an underlying tort which is actionable, the claim accrues when the conspiracy produces damage. *Radue*, 74 Wis. 2d at 245, 246 N.W. 2d at 511. Segall asserts in his affidavit that he was damaged by false and defamatory statements made in furtherance of the conspiracy in late 1972 and early 1973. The assertion that these statements were defamatory implies that plaintiff was damaged by them. *See Martin v. Outboard Marine Corp.*, 15 Wis. 2d 452, 459, 113 N.W.2d 135, 139 (1962) (allegation of special damages necessary unless oral statement is slanderous per se). Because plaintiff asserts he was damaged as a result of the conspiracy in violation of sec. 134.01 more than six years before commencing this action, the claim for damages from the conspiracy in violation of sec. 134.01 is barred.

### 3. *Fraud*

The period of limitation for an action based on fraud is six years. The claim accrues from the date of dis-

covery of the facts constituting the fraud. Sec. 893.19 (7), Stats. 1977.

The elements of fraud are a false representation made with intent to defraud and justifiable reliance by the injured party on the misrepresentation. *Ritchie v. Clappier*, 109 Wis. 2d 399, 404, 326 N.W.2d 131, 134 (Ct. App. 1982). Segall asserts that about November 19, 1972 he discovered the conspiracy among the defendants against him. The conspiracy included fraud. Shortly after receivership proceedings were commenced on November 24, 1972, Segall alleges Hoff informed Segall that he need not appear because everything could be worked out informally. Segall alleges that he relied on Hoff's statement and did not appear at the receivership proceeding and Hurwitz was appointed to act as the receiver. Segall claims no subsequent reliance on an alleged misrepresentation. Because Segall discovered the alleged fraud more than six years before he commenced this action, his fraud claims are barred.

### 4. *Interference With Contractual Relations*

One who, without privilege to do so, induces a third person not to perform a contract with another, is liable to the other for the harm caused. *Mendelson v. Blatz Brewing Co.*, 9 Wis. 2d 487, 490–91, 101 N.W.2d 805, 806–07 (1960). No specific statute applies to a claim for injury from contractual interference. The time to commence the action is therefore controlled by sec. 893.19 (5), Stats. 1977, which provides a six-year statute of limitations for actions "to recover damages for . . . an injury to the character or rights of another, not arising on contract, except in case where a different period is expressly prescribed."

According to Segall's factual chronology, the claim for interference with his contractual relations with the Park Bank accrued no later than November or December 1972, when the bank instituted the receivership proceedings and backed out of its promises to provide financing. That claim accrued more than six years prior to the commencement of the action and is barred.

We turn to the issue of interference with Segall's contractual relations with the Borden Company. Defendants contend that this claim accrued when the closing to purchase the Borden building aborted November 22, 1972. Segall contends that the claim accrued when he finally lost the battle to acquire the Borden building, which, according to his affidavit, occurred when final judgment was entered against him in 1974.

We conclude that the Borden claim accrued when the Borden Company refused to go forward with closing Segall's offer to purchase. The "interference" was consummated when the Borden Company refused to go ahead with the contractual agreement with Segall in 1972. Regardless whether Segall could successfully defend Koby's lawsuit, once Borden had backed out of the deal, allegedly as a result of the conspiracy, Segall had an actionable claim for contractual interference for the injury caused by the inability to close the sale of the Borden building. The claim is barred by the six-year statute, sec. 893.19 (5), Stats. 1977.

### 5. *Malicious Prosecution*

Segall contends that he pleaded a claim for malicious prosecution which is not barred by the statute of limitations. A cause of action for malicious prosecution accrues on the date the complainant was acquitted in the criminal prosecution. *Luby v. Bennett,* 111 Wis. 613,

616, 87 N.W. 804, 805 (1901). Segall was acquitted of the charge of threatening to commit arson on Miller's house in October 1973. No specific statute of limitations exists for a malicious prosecution claim. The general six-year tort statute, sec. 893.19(5), Stats. 1977, therefore controls. If malicious prosecution was properly pleaded, the action is timely.

Segall's "Second Cause of Action" alleges a conspiracy to defraud him. In two of the twenty-seven paragraphs in this part he alleges that January 5, 1973 Miller signed a complaint charging him with a crime, knowing the charges were false, and on which Segall was acquitted. Segall's affidavit opposing the motions for summary judgment asserts that January 1, 1973 a false criminal complaint charging him with threatening to bomb Miller's home was signed by Miller at the urging of Hurwitz; that October 5, 1973 Segall was acquitted; and that Miller had testified falsely that nobody would do business with Segall, who had threatened to bomb Miller to force Miller to invest in Segall's corporation.

Nowhere in Segall's complaint, affidavit or brief to the trial court is reference made to malicious prosecution. His trial brief stated that the criminal proceedings constituted a continuous and illegal act in violation of secs. 134.01 and 943.30, Stats. Segall nevertheless urges that we construe his complaint liberally and treat it as though it were amended to conform to the facts set forth in his affidavit.

We normally will not review an issue raised for the first time on appeal. *Allen v. Allen,* 78 Wis. 2d 263, 270–71, 254 N.W.2d 244, 248 (1977). This is a general rule of judicial administration from which we may depart. *Wirth v. Ehly,* 93 Wis. 2d 433, 444, 287 N.W.2d 140, 146 (1980). Here, however, Segall asks us to add a claim to his conspiracy charges, one which was never brought to the attention of the trial court as a separate

claim. To treat his complaint as though it were amended to plead that claim on the basis of the facts set forth in Segall's affidavit would be contrary to the summary judgment methodology set forth in *Grams, supra.* Under that methodology, the affidavits are examined only after the pleadings have been found to state a claim.

Accordingly, we do not review the argument that plaintiff has stated a claim for malicious prosecution. We turn to the breach of contract issues.

II. *Contract Claims.*

Miller and Horne moved for summary judgment on the breach of contract claims against them, asserting that the claims are barred by the statute of limitations. An action on a contract must be commenced within six years. Sec. 893.19(3), Stats. 1977.

The complaint alleges violations of the covenant not to compete throughout its five-year period, August 31, 1972 through August 31, 1977, and that Miller and Horne operated a railroad salvage business under the name "Miller-Horne" in violation of the contract. The trial court found from Segall's affidavit that he knew of the contract violations in early 1973. The court held that the claims were barred because Segall learned of the violations more than six years before the action was commenced.

The trial court erred when it held that because Segall knew of the breaches more than six years before commencing his action, Segall's claims for violation of the covenant not to compete and agreement not to use the business name were barred. A cause of action for breach of contract accrues on the date of the breach, not the date the breach is discovered. *Milwaukee County v. Schmidt, Garden & Erikson,* 43 Wis. 2d 445, 455, 168 N.W.2d 559, 564 (1969).

The covenant not to compete and the agreement not to use the business name for five years imposed continuing duties of performance on Miller and Horne during that period. Contracts requiring continuous performance for a specified period of time:

[A]re capable of a series of "partial" breaches, as well as of a single total breach by repudiation or by such a material failure of performance when due as to go "to the essence" and to frustrate substantially the purpose for which the contract was agreed to by the injured party. For each "partial" breach a separate action is maintainable, just as in the case of an "instalment" contract; and for a series of "partial" breaches occurring before any action is brought only one action is maintainable.

4 *Corbin on Contracts* sec. 956 at 841 (1951).

Accordingly, if the promisor has a continuing duty to perform, generally a new claim accrues for each separate breach. *Indian Territory Illuminating Oil Co. v. Rosamond,* 120 P.2d 349, 352 (Okla. 1941). The injured party may assert a claim for damages from the date of the first breach within the period of limitation. *See Will of Bate,* 225 Wis. 564, 573, 275 N.W. 450, 454 (1937) (claim for breach of decedent's agreement to pay for services maintainable only for services rendered within six years of decedent's death) ; *Butler v. Kirby,* 53 Wis. 188, 192, 10 N.W. 373, 375 (1881) (claim for breach of employment contract for employer's failure to pay extra $8 per month maintainable only for payments due within six years of filing suit).

A continuing contract is capable not only of a series of partial breaches but also of a single total breach by repudiation or a material failure of performance. 4 *Corbin on Contracts* sec. 956 at 841. If a single total

breach occurs, the right to bring an action accrues at that time and the statute of limitations begins to run. 4 *Corbin on Contracts* sec. 989 at 967.

The trial court did not determine whether Horne and Miller committed a single total breach of their covenant not to compete or their agreement not to use the business name. The affidavit by Miller and Horne's attorney in support of their motion for summary judgment states only that the complaint does not allege conspiratorial activities by Miller and Horne after January 1973. Whether violations of their contractual obligations occurred before or after May 23, 1973 (six years prior to the filing of the complaint), or whether a repudiation or other total single breach occurred, is not covered by the affidavit.

Because Miller and Horne failed to present a prima facie case for summary judgment dismissing the contract claims against them, we must reverse the judgment insofar as it dismisses those claims.

Finally, plaintiff raises issues with respect to the admissibility of tape-recorded telephone conversations between several defendants. The trial court ruled the tapes inadmissible under sec. 885.365(1), Stats. According to plaintiff's brief, the taped conversations pertain solely to his conspiracy claims. We therefore do not reach the issues raised regarding the tapes.

*By the Court.*—Judgment reversed and cause remanded insofar as it dismisses the complaint as to defendants Miller and Horne, and otherwise affirmed.

RECONSIDERATION of the decision filed June 27, 1983.

Before Gartzke, P.J., Foley, J., and W.L. Jackman, Reserve Judge.

GARTZKE, P.J.   We requested the parties' views on the effect of the supreme court's opinion in *Hansen v. A.H. Robins, Inc.*, 113 Wis. 2d 550, 335 N.W. 2d 578 (1983) on our decision.   We conclude that our decision need not be changed.

After we released our decision, the *Hansen* court changed the law regarding the date on which a tort claim accrues for purposes of computing the time in which an action must be commenced.   The *Hansen* court said:

In the interest of justice and fundamental fairness, we adopt the discovery rule [for the statute of limitations] for all tort actions other than those already governed by a legislatively created discovery rule.   Such tort claims shall accrue on the date the injury is discovered or with reasonable diligence should be discovered, whichever occurs first.   All cases holding that tort claims accrue at the time of the negligent act or injury are hereby overruled.

113 Wis. 2d at 560, 335 N.W.2d at 583.

We assume without deciding that the new accrual rule stated in *Hansen* is retroactive.

Defendants find no effect of the *Hansen* holding on our decision.   Segall states that *Hansen* affects only one item of his damage, the loss of his license to sell real estate.   Segall argues that he could not reasonably have known that this item of his damages existed until the date he lost his license.   That date is less than six years before he commenced this action.   He concludes that his claim for damages resulting from the loss of his license is not barred by the six-year statute of limitations.

Segall did not plead that the defendants conspired to deprive him of his license as a separate claim.   He characterized one of his claims as a conspiracy to injure his business reputation, contrary to sec. 134.01, Stats.   That tort consists of a conspiracy in violation of sec. 134.01, which causes damage to the plaintiff.   *Radue v. Dill*, 74

Wis. 2d 239, 245, 246 N.W.2d 507, 511 (1976). He asserts he lost his license because of false statements by the defendants to the Wisconsin Real Estate Examining Board. That loss is part of his damages attending the alleged tort arising out of a violation of sec. 134.01.

We proceed to apply the *Hansen* rule on accrual to the claimed sec. 134.01, Stats., tort. The *Radue* court said that if "a violation of the criminal statute sec. 134.01, Stats., causes damage to a person, a cause of action accrues to him for such a violation." 74 Wis. 2d at 245, 246 N.W.2d at 511. The *Radue* court used "damage" and "injury" interchangeably in its opinion. Accordingly, a cause of action accrues for a conspiracy to injure the business reputation of another on the date the plaintiff discovers or should in the exercise of reasonable diligence have discovered the plaintiff was damaged.

The affidavit supporting Segall's motion for summary judgment shows that Segall knew or should have known more than six years before May 23, 1979 when he commenced this action that defendants had conspired to injure his business reputation and that he had been damaged by the conspiracy. Segall asserts that November 19, 1972 he discovered notes written by Hurwitz which suggested that Hurwitz was spreading defamatory information about him and attempting to get him to release his interest in the Borden building, among other things, by organizing a group to put pressure on the plaintiff. He asserts that the notes contained statements such as "Sol must sign building over to Max—complete —lose real estate license . . . ." He asserts that the notes refer to business between Segall and the defendants, and that the notes name all but one of the defendants.

Accordingly, our decision filed June 27, 1983 is confirmed.