Francis ZELLER and Jack Zeller d/b/a Zeller Farms,
and George Tipler and Gene Tipler
d/b/a Tipler Brothers, Plaintiffs-Respondents,†

v.

NORTHRUP KING COMPANY, Defendant-Appellant.

Court of Appeals

*No. 84–960. Argued March 26, 1985.—Decided May 15, 1985.*
(Also reported in 370 N.W.2d 809.)

† Petition to review denied.

For the defendant-appellant, there were briefs and oral argument by *David M. Skoglind* of *Dempsey, Magnusen, Williamson & Lampe,* of Oshkosh.

For the plaintiffs-respondents, there was a brief and oral argument by *Philip A. Munroe* of *Di Renzo and Bomier,* of Neenah.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

NETTESHEIM, J.   Northrup King Company appeals from a judgment entered after a jury determined it made misrepresentations about its soybean seed product. Three issues are raised by Northrup King on appeal. First, it claims that the warranty provisions of Wisconsin's Uniform Commercial Code (UCC) preempt the common-law action for misrepresentation and that therefore the trial court erred by failing to instruct the jury on breach of warranty. We conclude that Northrup King waived this issue and we decline to address it. Second, Northrup King claims this case was inappropriate for the submission of punitive damages to the jury. We disagree because we find sufficient evidence of the requisite conduct for the imposition of punitive damages. Third, Northrup King argues that the trial court erred in awarding attorney fees under sec. 100.18(11)(b)2, Stats., because the pertinent part of that statute was not effective at the time the incidents in this case occurred. We do not reach this issue because we conclude that the award of attorney fees could not be based on a finding that Northrup King violated sec. 100.18(1). We therefore reverse the award of reasonable attorney fees.

In May 1979, Francis and Jack Zeller and George and Gene Tipler planted soybean seeds in various fields on their farms. Neither the Zellers nor the Tiplers had grown soybeans before, and soybeans had never been

grown in any of the fields in which the seeds were planted.

The soybean seeds planted by the Zellers and Tiplers were produced by Northrup King and purchased from a local Northrup King seed dealer. Before planting the seeds, Francis Zeller returned to the Northrup King dealer to purchase an inoculant to add to the seeds. A representative of Northrup King, Dick Wessel, happened to be at the local dealership that day and told Zeller that it was not necessary to inoculate the seeds because the Northrup King soybean seeds were preinoculated. Wessel also showed Zeller literature in which Northrup King urged farmers to use Northrup King's preinoculated seeds. Zeller did not purchase the inoculant. Based on Wessel's statements and the Northrup King literature, neither the Zellers nor the Tiplers inoculated the seeds before planting.

The plants appeared to grow normally until mid-June when the Zellers and Tiplers noticed that their plants were a lighter shade of green than normal soybean plants. By mid-August, the leaves on the plants were yellowing and the plants were shorter than soybean plants in neighboring fields. In an effort to determine the cause of the problem, the Zellers and Tiplers pulled several plants and discovered that their soybean plants had no nodules on the root systems. The formation of nodules is necessary to provide sufficient nitrogen to soybean plants. Inoculating soybean seeds with a certain bacteria prior to planting causes nodules to form. The Zellers and Tiplers claimed that they suffered a decreased crop yield due to the problems they experienced as a result of insufficient nodules on their plants.

The Zellers and Tiplers commenced this action, alleging a reduced crop yield caused by misrepresentations by Northrup King employees and literature. At trial, there was testimony from several Northrup King employees that they believed that the preinoculated seeds were not

effectively inoculated when planted in fields where soybeans had not been previously grown. Other Northrup King employees, including Wessel, testified that they had not been informed of the problems which could result from planting the preinoculated seed in a virgin field without adding more inoculant.

The case was submitted to the jury on theories of intentional misrepresentation, strict responsibility for misrepresentation and negligent misrepresentation. The jury found Northrup King liable under strict responsibility for misrepresentation. In addition to compensatory damages, the jury awarded punitive damages. At the postverdict motion hearing, the trial court awarded the Zellers and Tiplers reasonable attorney fees pursuant to sec. 108.18(11)(b)2, Stats. Northrup King appeals.

We first consider whether the trial court erred by failing to submit the case to the jury under a warranty theory. Northrup King argues that not only do the warranty provisions under Wisconsin's UCC apply but that those provisions preempt the common-law action of misrepresentation in cases involving the sale of goods. Because we conclude that Northrup King waived this issue, we decline to address its merits.

The Zellers and Tiplers' complaint set forth causes of action which included breach of express and implied warranty. The trial court refused to submit instructions under a warranty theory because it found no evidence that the Zellers or Tiplers relied on any warranty by Northrup King at the time they purchased the seeds. Northrup King objected, arguing that the evidence supported submission of questions on breach of warranty. Northrup King did not argue that warranty instructions and questions should be submitted because the warranty provisions of Wisconsin's UCC preempted the common-law action for misrepresentation. Rather, Northrup King requested that the trial court submit a warranty instruc-

tion and verdict question as an *additional* theory of recovery.

Whether the warranty provisions of Wisconsin's UCC preempt the common-law action for misrepresentation was never raised before the trial court. Generally, this court will not consider issues raised for the first time on appeal. *Segall v. Hurwitz,* 114 Wis. 2d 471, 489, 339 N.W.2d 333, 342 (Ct. App. 1983).[1] Without a specific objection which brings into focus the nature of an alleged error, a party does not preserve its objections for review. *Air Wisconsin, Inc. North Central Airlines, Inc.,* 98 Wis. 2d 301, 311, 296 N.W.2d 749, 753 (1980). Because Northrup King waived the preemption issue, we decline to address it.

Whether the trial court properly submitted the issue of punitive damages to the jury is the next issue we consider. Because the evidence presented an appropriate case for punitive damages, we conclude that the trial court properly submitted the issue to the jury.

The trial court initially determines whether the evidence presents a proper case for submitting the issue of punitive damages to the jury. *Wangen v. Ford Motor Co.,* 97 Wis. 2d 260, 298, 294 N.W.2d 437, 457 (1980). This determination presents a question of law for the trial court as well as for the appellate court reviewing the determination. *Walter v. Cessna Aircraft Co.,* 121 Wis. 2d 221, 231, 358 N.W.2d 816, 821 (Ct. App. 1984).

Punitive damages can be considered only where there is proof of malice or willful, wanton, reckless disregard of the plaintiff's rights. *Wangen* at 275, 294 N.W.2d at 446. In other words, there must be present circumstances

---

[1] This is a general rule of judicial administration from which we may depart. *Segall v. Hurwitz,* 114 Wis. 2d 471, 489, 339 N.W.2d 333, 342 (Ct. App. 1983). Northrup King urges us to consider the merits of their argument because it presents a novel argument. We disagree and decline to address the issue.

of aggravation in the tortious injury or "outrageous" conduct. *Id.* at 268, 294 N.W.2d at 442. An intentional desire to injure is not a requisite of a punitive damages case. *Cessna* at 226, 358 N.W.2d at 819. Reckless disregard is a "[r]eckless indifference to the rights of others and conscious action in deliberate disregard of them . . . ." *Wangen* at 267, 294 N.W.2d at 442, quoting Restatement (Second) of Torts § 908 comment b (1979).

In *Cessna,* this court set forth factors a trial court should consider in determining whether outrageous conduct is presented which would support submitting the punitive damages issue to a jury in a products liability case:

(1) the existence and magnitude in the product of a danger to the public;

(2) the cost and feasibility of reducing the danger to an acceptable level;

(3) the manufacturer's awareness of the danger, of the magnitude of the danger, and of the availability of a feasible remedy;

(4) the nature and duration of, and the reasons for, the manufacturer's failure to act appropriately to discover or to reduce the danger; and

(5) the extent to which the manufacturer purposefully created the danger.

*Cessna* at 228–29, 358 N.W. at 820. These factors are not prerequisites which must be proven in every case. *Id.* at 229, 358 N.W.2d at 821. Although *Cessna* was a products liability case where as this is a misrepresentation case, we find that the *Cessna* factors may be appropriately considered.[2] Rather than discussing these factors in terms of the danger to the public as in *Cessna,* we dis-

---

[2] We recognize that these factors will not apply to all tortious activity.

cuss these factors in terms of injury or harm to the public.

Applying the factors listed in *Cessna* to the facts of this case, we conclude that there was sufficient evidence of outrageous conduct to justify the trial court's submission of the punitive damages issue to the jury. The evidence indicated that all farmers planting the preinoculated seeds in virgin fields would experience problems in growing soybeans because the plants would not form a sufficient number of nodules unless more inoculant was added to the seeds. As a result, these farmers would suffer economic harm in the form of decreased crop yields. The outrageous conduct lies in Northrup King's prior knowledge of the problems of using its preinoculated seed in virgin fields and its failure to disseminate that knowledge to its local dealers.

The feasibility of relaying the information is borne out by the fact that Northrup King later released a document which cautioned farmers planting the preinoculated seeds in virgin fields to reinoculate the seeds. This document was released a few months after Northrup King learned of the Zellers and Tiplers' problems. The jury coud infer that the cost of relaying this information would be relatively low. Several Northrup King employees testified as to their prior awareness of the injury or harm that could occur for farmers planting the preinoculated seeds in virgin fields. One employee testified that Northrup King knew about these problems as early as 1972. Employees at the local level, however, testified that this information was never relayed to them. These facts present sufficient evidence of outrageous conduct and we therefore conclude that the punitive damages issue was properly submitted to the jury.[3]

---

[3] We do not find the fifth factor, the extent to which the manufacturer purposefully created the danger, applicable here.

Next, we consider whether the trial court properly awarded attorney fees under sec. 100.18(11)(b)2, Stats., to the Zellers and Tiplers. Although the parties' arguments focus on the retroactivity of the pertinent language of sec. 100.18(11)(b)2, we do not reach this issue because we conclude that the award of attorney fees was not based on any finding of a violation of sec. 100.18(1).[4] We reverse the award of attorney fees.

Section 100.18(11)(b)2, Stats., in pertinent part provides:

Any person suffering pecuniary loss *because of a violation of this section* by any other person may sue in any court of competent jurisdiction and shall recover such pecuniary loss, together with costs, including reasonable attorney fees. [Emphasis added.]

Section 100.18(1), as it applies here, prohibits a person from making an untrue, deceptive or misleading representation of any kind to the public with intent to sell, distribute, increase the consumption of or in some manner dispose of the merchandise or with intent to induce the public in any manner to enter into any contract or obligation relating to the purchase, sale, hire, use or lease of merchandise. The aim of sec. 100.18(1) is to protect the public from untrue, deceptive or misleading representations made in sales promotions. *State v. Automatic Merchandisers of America, Inc.*, 64 Wis. 2d 659, 665, 221 N.W.2d 683, 686–87 (1974).

As noted in *Walter v. Cessna Aircraft Co.*, 121 Wis. 2d 221, 358 N.W.2d 816 (Ct. App. 1984), these factors are not prerequisites for a finding that the defendant's marketing conduct was outrageous such that each must be proven in every case. *Id.* at 229, 358 N.W. 2d at 821. Rather, they provide a useful guideline for trial courts in deciding whether to send the punitive damage issue to the jury. *Id.*

[4] We discuss only subsection (1) of sec. 100.18, Stats., because this is the only subsection that applies under the facts of this case.

Under the facts of this case it would be difficult to conclude that the untrue representations were made with an intent to sell or increase the consumption of Northrup King's product. The representations made to the Zellers and Tiplers by Wessel and the Northrup King literature were made *after* the purchase of the soybean seeds and not during a sales promotion. It appears from the record that the untrue representation was made to *discourage the purchase* of inoculant, not to induce the sale of a Northrup King product. Section 100.18(1), Stats., therefore, is inapplicable under these facts.

Section 100.18(11)(b)2, Stats., allows recovery of attorney fees by a person suffering pecuniary loss because of a violation of sec. 100.18. Here there was no violation, and therefore the trial court improperly relied upon sec. 100.18(11)(b)2 in awarding reasonable attorney fees. A plaintiff may not recover attorney fees unless such liability arises from specific statutory provisions or contract of the parties. *Shands v. Castrovinci*, 115 Wis. 2d 352, 357, 340 N.W.2d 506, 508 (1983). Because sec. 100.18(11)(b)2 was improperly relied upon and there is no contract providing for recovery of attorney fees, we reverse the trial court's award of attorney fees.

*By the Court.*—Judgment affirmed in part and reversed in part.