**Nancy KEITH–POPP and Jonas Popp, Plaintiffs,**

**v.**

**ELI LILLY AND COMPANY, E.R. Squibb and Sons, Inc., Abbott Laboratories, Carnrick Laboratories, a division of G.W. Carnrick Co., Cole Pharmical Company and Upjohn Company, Defendants.**

**No. 86–C–102–S.**

United States District Court, W.D. Wisconsin.

July 25, 1986.

Lisa M. Drill, New Richmond, Wis., for plaintiffs.

Laura D. Stith, Kansas City, Mo., John M. Swietlik, Dominic S. Amato and Harold A. Laufer, Milwaukee, Wis., Judith Royal, Chicago, Ill., John Theiler Bode, Waukesha,

Wis., and Robert G. Wixson, Madison, Wis., for defendants.

## MEMORANDUM AND ORDER

SHABAZ, District Judge.

Before the Court is the motion of the defendants [1] for summary judgment based on the statute of limitations applicable to plaintiffs' claims. The facts, which are taken as true for purposes of this motion and which are undisputed as noted, are as follows.

## FACTS

Plaintiffs Nancy Keith-Popp and Jonas Popp are husband and wife residents of Wisconsin. They were married on June 6, 1981. Each of the defendants are corporations domiciled, and with principal offices, in states other than Wisconsin. Each of the defendants is a manufacturer, seller, and distributor of pharmaceutical products on a national scale. Each manufactured, sold and distributed a synthetic estrogen known under various names (Diethylstilbestrol, Stilbestrol, Dienestrol) and commonly called DES, in 25 milligram size tablets in the years 1957 and 1958. During that period the drug was prescribed to pregnant women, purportedly to prevent possible spontaneous abortions.

Nancy Keith-Popp (hereinafter "plaintiff") was exposed to DES *in utero* when her mother, Lorraine Alice Popp, ingested the drug during her pregnancy with plaintiff in 1959. Plaintiff was born on September 28, 1959.

Plaintiff gave birth to a female child on April 3, 1982. The child, named Alice Lorraine Popp, was approximately two months premature, and died on April 7, 1982. Plaintiff again became pregnant in October 1982, was hospitalized during the latter part of the pregnancy, feared another premature labor, but gave birth to an apparently healthy female child in June 1983 named Roberta Popp, such birth being some four or five weeks premature.

Plaintiff claims that her exposure to DES marketed by the defendants caused her significant pain and discomfort prior to, during and after the birth of Alice, and also caused the premature birth and death of Alice, and the premature birth of Roberta. She also alleges that she has undergone certain physiological changes, will undergo further changes of the same type, and that she has an increased risk of cancer. She claims damages under several theories of liability including negligence, strict product liability and misrepresentation.

It is undisputed that sometime in the early to mid-1970's plaintiff's mother learned of problems in children of mothers who had ingested DES during pregnancy. Her mother took plaintiff to a doctor at Mayo Clinic, Dr. Kenneth Noller, who was conducting a study of women exposed to DES *in utero*. Plaintiff was examined from time to time from 1975 (perhaps earlier) until 1985 to determine what effects, if any, her exposure to DES had caused. Her visits were at six month intervals until the late 1970's and yearly thereafter. She was told at some point in this course of treatment that there were cellular changes in the cervix which could be "precancerous," and that she had an increased chance of contracting cervical cancer. Plaintiff has been apprehensive about contracting cancer since that time. In May 1985, Dr. Noller told plaintiff her condition had improved so that she no longer had to visit him on a yearly basis, but that she should continue to have yearly checkups with her own physician.

Although there is considerable dispute between the parties concerning conclusions to be drawn from the record about the state of plaintiff's knowledge about DES and its impact on her pregnancies, the record does disclose the following:

1. Plaintiff understood that her visits to Dr. Noller since her early teens were related to DES exposure;

---

1. All defendants except Upjohn Company have joined in this motion. Upjohn did raise the statute of limitations as an affirmative defense in its answer, and the Court's disposition of the question in this memorandum and order is conclusive as to all parties.

2. Plaintiff in 1981 wrote for information from a DES group and received a pamphlet that "repeated information that I had already known," including "pregnancy, pregnancy problems, premature labor;"

3. Later in 1981 plaintiff wrote a college research paper on the subject of DES exposure and increased cancer risk;

4. In July 1982 Dr. Noller told her, after being informed about the premature birth and death of Alice, "that he was pretty sure that it had something to do with my exposure to DES;" and

5. Plaintiff was not "positive" that DES had anything to do with the premature birth and labor problems she was experiencing until after the birth of Roberta.

With respect to the fourth subparagraph above, plaintiff reiterated this point a number of times in her deposition, and interrogatories to which she has responded include the following question and answer:

*Interrogatory No. 24.* [From defendant Eli Lilly] Please state the name, address and specialty of each doctor who has given you, your attorney, your husband, or your representative an opinion as to the probable cause of the injuries, conditions or illnesses complained of in this lawsuit and whether such opinion was communicated orally or in writing, the substance of each such opinion, and the date each such opinion was given.

Answer: Dr. Kenneth Noller, Mayo Clinic, Rochester, MN 5590–1. [sic] OB and GYN specializing in DES and related problems.

In July of 1982, he told my husband and me that the DES caused my precancer problem and that it caused the premature labor.

## MEMORANDUM

It is undisputed that the statute of limitations applicable to all of plaintiff's claims is § 893.54, Wis.Stat., which states that:

893.54 *Injury to the person.* The following actions shall be commenced within 3 years or be barred:

(1) An action to recover damages for injuries to the person.

(2) An action brought to recover damages for death caused by the wrongful act, neglect or default of another.

Therefore, it is clear that any of plaintiff's claims which accrued prior to January 3, 1983 (three years prior to the filing of this action in the Circuit Court for St. Croix County, Wisconsin) are barred by the above statute. The critical issue posed by this motion is the date of accrual.

The Wisconsin Supreme Court recently reversed a long line of cases that established the accrual date for personal injury actions as the date of injury. In *Hansen v. A.H. Robins, Inc.,* 113 Wis.2d 550, 335 N.W.2d 578 (1983), the Court adopted a discovery rule, holding that a claim does not accrue until the injury is discovered or in the exercise of reasonable diligence should be discovered.

The application of this rule to the facts of this case requires an assessment of the possible accrual dates of plaintiff's various claims. They are:

First Cause of Action: Medical expenses and pain and suffering related to the premature delivery and death of Alice before and after Alice's birth on April 3, 1982;

Second Cause of Action: Medical expenses and pain and suffering related to the premature delivery of Roberta before and after Roberta's birth on June 2, 1983;

Third Cause of Action: Medical expenses and pain and suffering related to the physiological changes caused by plaintiff's exposure to DES;

Fourth Cause of Action: Medical expenses and pain and suffering related to the increased risk of cancer caused by plaintiff's exposure to DES;

Fifth Cause of Action: Damages caused by the defective condition of DES when it left the possession and control of defendants;

Sixth Cause of Action: Damages caused by the misrepresentations of defendants concerning the safety of DES use by pregnant women;

Seventh Cause of Action: Damages caused by a conspiracy among the de-

fendants to misrepresent the safety of DES among pregnant women;

Eighth Cause of Action: Punitive damages.

█ The first cause of action, to the extent that it is a wrongful death action based on the death of Alice, accrued at the time of death. That is, the claim for the wrongful death of Alice accrued on April 7, 1982. As this is more than three years before the filing of the complaint, the claim is time barred.

Plaintiff argues that she was not aware that DES caused Alice's death and caused her personal injuries associated with the pregnancy and its aftermath until after she experienced similar difficulties with her second pregnancy with Roberta. Plaintiff persists in confusing discovery of injury with discovery of cause. The injury or injuries of which plaintiff complains in her first cause of action manifested themselves at or about the birth and death of Alice. It is possible that this confusion is warranted by the *Hansen* decision. That plaintiff suffered an illness which was originally diagnosed as possible gastroenteritis and not pelvic inflamatory disease (PID) caused by the intrauterine device marketed by the defendant. This diagnosis was outside of the statute of limitations period. Shortly thereafter, and within the statutory period, she was told, after a recurrence of the original illness, that her problem was probably PID caused by the intrauterine device. According to the court, this second diagnosis was the critical "discovery" for purposes of the discovery rule:

> We cannot say that Hansen should have discovered her injury any earlier. She could not be expected to personally diagnose her condition or consult with a physician more frequently than she did. We conclude that, under the discovery rule adopted in this opinion, Hansen's claim accrued on June 26, 1978. Therefore her complaint, filed on June 24, 1981, was timely.

*Id.* 335 N.W.2d at 583.

Plaintiff here makes the most of this possible inconsistency. However, the brief in opposition to the motion is made in the wrong case for there is what amounts to a smoking gun. Her own narrative by deposition and interrogatory, of the meeting with Dr. Noller in July 1982, discloses that she knew, or certainly should have known, that her injuries associated with her pregnancy with Alice (and Alice's death) were caused by her exposure to DES. She flatly states that Dr. Noller, who had been examining her for years looking for problems caused by exposure to DES, told her so. Nothing in the discovery rule enunciated in the *Hansen* decision requires that a litigant be convinced of the causation, or that a litigant be aware of all of the "technicalities" (*see* plaintiff's Response to Defendant's Findings of Fact, ¶ 19). In every case there must be some point at which a plaintiff has "a claim capable of present enforcement, a suable party against whom it may be enforced, and a party who has a present right to enforce it." *Hansen*, 335 N.W.2d at 580. If plaintiff prevails on question at issue here, that point is never reached until a plaintiff is subjectively certain of the cause of the injury. That, of course, will never be more than three years prior to filing the complaint because the date of such "discovery" will be completely under the control of the plaintiff.

At any rate, the discovery rule enunciated in *Hansen* is, in this Court's view, clearly a discovery of injury rule. The statute begins to run at the time the plaintiff discovers, or should, with reasonable diligence, discover the injury. The discovery of the cause of the injury is irrelevant. The only court to face this issue squarely agrees. *Jaeger v. Raymark Industries, Inc.*, 610 F.Supp. 784, 787–88 (E.D.Wis. 1985) (Judge Gordon). Plaintiff discovered her injury and, in fact, should have been aware of the cause because of the close monitoring of her pregnancy with Alice due to DES exposure history, at the time of Alice's premature birth at the latest. This was approximately three years and nine months before the filing of this lawsuit and, therefore, outside of the statute of limitations.

■ Plaintiff's discovery of the injuries enumerated in the third and fourth causes of action are clearly time barred. The only physiological changes noted in any of the evidence of record are the cervical cell changes. Plaintiff was informed of these changes and of the increased risk of cancer sometime in the mid to late 1970's by Dr. Noller. Assuming that plaintiff was a minor when she was so informed, the statute of limitations had run long before this action was filed by virtue of § 893.18 Wis. Stat. (extending the statute of limitations for one year past the age of majority).

■ The second cause of action presents a different kind of problem. The problems associated with plaintiff's pregnancy with her second child, Roberta, and the lengthy hospitalization prior to birth occurred in 1983, that is, within the statute of limitations. Defendants argue, however, that these damages were the consequences of the alleged injury which was discovered, at the latest, in July 1982, when Dr. Noller told plaintiff that her pregnancy problems with Alice were caused by DES. Since the injury was discovered outside of the statute of limitations, the argument continues, an action for recovery of damages associated with that injury are time barred.

■ The Court agrees with the defendants' contention. The major authority compelling the Court's conclusion is *Olson v. St. Croix Valley Memorial Hospital, Inc.,* 55 Wis.2d 628, 201 N.W.2d 63 (1972). Although predating the adoption of the discovery rule by a number of years, this decision adopts an analysis of injuries and consequential damages as it concerns statutes of limitation that is fully applicable here. A transfusion of blood with the wrong RH factor in 1962 allegedly caused the plaintiff to give birth to a child that lived only seven hours in 1966, and to a stillborn child in 1969. She filed suit in 1970 and a three-year statute of limitations was applicable to the claim. The Court concluded that the injury occurred, and the claim accrued, at the time of the transfusion in 1962, so that the claim was time barred:

> Under the facts alleged, the first injury occurred in 1962. That injury commenced the period of limitations. Subsequent consequential injuries alleged to have occurred in 1966 had no effect on a cause of action already accrued.

201 N.W.2d at 65. The conclusion is inescapable that a subsequent consequential injury does not restart the period of limitations or constitute the accrual of another cause of action. This view is reinforced by the Court's statement concerning the *Olson* plaintiff's argument that the "injury" which started the period of limitations was the death of the children:

> Since it is alleged that the introduction of the blood caused the death of the "children," it appears from the face of the complaint that, under any theory, the injury complained of could not have occurred later than December 1, 1966, four years prior to the commencement of the instant action. Even were we to consider the death of one of the children in 1966 as the event that triggered the cause of action, the 1970 lawsuit was brought too late.

*Id.* In *Segall v. Hurwitz,* 114 Wis.2d 471, 339 N.W.2d 333, 339 (Ct.App.1983), the court cited *Olson* for precisely this proposition: "A later injury from the same tortious act does not restart the running of the statute."

The only thing that has changed because of *Hansen* is that accrual of a cause of action occurs at the time of discovery of the injury rather than at the time of injury. The damages sought in plaintiff's second cause of action are consequences of DES-caused premature labor and delivery, and the claim is time barred because it accrued more than three years before the filing of this lawsuit.

Finally, it is clear that the fifth, sixth and seventh causes of action are governed by the same principles, as they merely reallege the same damages and assert different theories of recovery. Nor is the eighth cause of action, for punitive damages, viable in light of the foregoing decision.

Accordingly,

## ORDER

IT IS ORDERED that the motion for summary judgment by the defendants is GRANTED. Judgment shall be entered accordingly, with prejudice and costs.